A95A2863. HEMAK et al. v. HOUSTON COUNTY SCHOOL DISTRICT et al.
(469 SE2d 679)

SMITH, Judge.

Mr. and Mrs. Hemak brought this action against Ocmulgee Dis-

posal, Inc., the Houston County School District, the Houston County Board of Education, and several school district employees for personal injuries incurred by Mrs. Hemak on the premises of Warner Robins Middle School. The Hemaks appeal summary judgment granted on the basis of derivative or official immunity in favor of Beck, the school principal, and Rewis, a teacher who also developed a district-wide safety program. We conclude that Beck and Rewis are immune from individual liability because their duties and acts were discretionary, not ministerial. We therefore affirm.

In December 1991, Mrs. Hemak was leaving a school concert when she fell into a damaged storm drain grate in a roadway. The Hemaks alleged in their complaint that the grate had been damaged at some previous time by Ocmulgee, the private garbage collection contractor for the school. Ocmulgee allegedly dropped a dumpster on the grate, breaking and bending a bar on the grate and creating a gap large enough for Mrs. Hemak's foot to pass through.

Some time before Mrs. Hemak's injury, Beck noticed the damaged grate as he was walking on the school grounds. He met personally with an employee of the maintenance department and asked him to report the damaged grate on his radio, which was done in Beck's presence. A maintenance department supervisor came to the school and inspected the grate as soon as he received the radio call. He determined that the grate could be temporarily repaired but ultimately would require replacement "when one could be ordered and got in stock." A temporary repair was made the next day, but failed at some later time because the weld did not hold. While it was Beck's experience that the maintenance department generally did "a pretty good job" in making repairs, the grate was not repaired again or replaced before Mrs. Hemak's injury, which occurred on December 12, 1991. No witness had an exact recollection of when the damaged grate was first noticed and reported, but Beck believed it was in early or mid-October. He did not know what steps had been taken by the time of Mrs. Hemak's injury to repair or replace the grate.

While Rewis had used the title of "safety director," he disputed that title, testifying that his job description was "Safety and Driver Education." He was a driver education teacher, transportation safety and bus driving teacher, and bus license examiner, who also worked with the district's workers' compensation program. He had taken some classes on traffic safety and was required to make inspections of school facilities and school grounds as part of the school district safety program. He testified, however, that the focus of the safety program was employee safety and workers' compensation. He performed fairly regular inspections of Warner Robins Middle School, including one in November 1991, but he did not notice any damage to this grate.

The Hemaks contend Beck was negligent both in failing to follow up his call to maintenance to ensure that the grate was properly repaired in accordance with his instructions and in failing to ensure that warnings were placed or a temporary repair made.[1] They also contend Rewis was negligent in failing to find the broken grate in his November 1991 safety inspection.

As the trial court correctly noted, this case turns on the principle of derivative or official immunity of government officials and employees. "Sovereign or governmental immunity, which applies to the state and its subdivisions, is intended to protect the public purse. Official immunity, in contrast, is applicable to government officials and employees sued in their individual capacities. While official immunity does not apply to purely ministerial duties required by law, public officials are immune from individual liability for discretionary acts undertaken in the course of their duties and without wilfulness, malice, or corruption. This official immunity is intended to protect public officials in the honest exercise of their judgment, however erroneous or misguided that judgment may be. Otherwise, not only would it be difficult to get responsible men to fill public office, but there would be constant temptation to yield officially to unlawful demands, lest private liability be asserted and enforced." (Citations and punctuation omitted.) *Schmidt v. Adams*, 211 Ga. App. 156 (438 SE2d 659) (1993).

The scope of this official immunity was clearly established in *Hennessy v. Webb*, 245 Ga. 329 (264 SE2d 878) (1980), and *Holloway v. Dougherty County School System*, 157 Ga. App. 251, 252-253 (277 SE2d 251) (1981). "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citations and punctuation omitted.) *Joyce v. Van Arsdale*, 196 Ga. App. 95, 96 (395 SE2d 275) (1990). See also *Sisson v. Douglas County School Dist.*, 181 Ga. App. 77, 78-79 (1) (351 SE2d 272) (1986).

The recent decision of *Bitterman v. Atkins*, 217 Ga. App. 652, 654 (458 SE2d 688) (1995) (physical precedent only), involved facts very similar to those presented here. A student was injured by the collapse of improperly installed lockers in the gym dressing room. His parents sued the school principal, alleging failure to supervise the workmen who installed the lockers. After reviewing the law giving

---

[1] As noted above, a maintenance supervisor testified that a temporary repair was made, although it later failed.

public officials immunity for discretionary acts, this Court observed: "Plaintiffs alleged that the principal's failure was compounded by the fact that he was aware the lockers had previously been pushed over by students injuring another student. Although the principal was primarily responsible for ordering the new lockers, once they were delivered, . . . the maintenance supervisor was responsible for the installation. The principal's responsibility was within his discretionary duties, and as such, the doctrine of sovereign immunity acts to shield [him] in the absence of evidence that [he was] wilful, malicious, or corrupt. [Cits.]" Id. at 654-655.

The reasoning in *Bitterman* is directly applicable here. Inspecting school property for hazards, deciding what constitutes a hazard, selecting appropriate methods for correction, and creating priorities and a schedule for correction, all necessarily involve the exercise of discretion whether on the part of Beck or Rewis. See, e.g., *Hennessy*, supra (school principal's failure to correct allegedly unsafe rug and mat in doorway involved exercise of discretionary function). If anything, this case presents a clearer case of the exercise of discretion than *Bitterman*. Here, a school official exercised his discretion and reported the damaged grate to the appropriate department for repair, the grate was in fact repaired, and the repair failed. The follow-up or review of repairs made by a maintenance department, involving as it does the evaluation of the quality of those repairs, is the essence of a discretionary function.

The Hemaks contend that this Court should adopt a more restrictive definition of "discretionary" taken from the text of the Georgia Tort Claims Act. This assertion is without merit. That Act is inapplicable here, see OCGA § 50-21-22 (5), and the definition by its own terms applies only "as used in this article." OCGA § 50-21-22. Moreover, it does not appear that the use of that definition would change the result in this case. As noted above, the decisions made by the defendants in this case required the exercise of "policy judgment in choosing among alternate courses of action based upon a consideration of social, political, or economic factors." OCGA § 50-21-22 (2).

The Hemaks also assert that a regulation promulgated by the Houston County School Board created an absolute, non-discretionary, ministerial duty on the part of Beck and Rewis to follow up personally on the repair to ensure it was carried out properly. This regulation is entitled "Safety of Buildings and Grounds" and provides: "A continuous evaluation of each school facility shall exist in ascertaining the ultimate in safety considerations. The building principal and custodial staff shall maintain an on-going safety program in conjunction with the buildings and grounds department in assuring that a reasonable program of facility safety is carried out. . . . Situations which openly invite accidents in the buildings or on the grounds should be

eliminated and avoided."

In *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995), we discussed the effect of school board regulations on the status of school employees' acts as ministerial or discretionary in nature. A student was injured by a visitor on school property and sued the school principal, contending that the principal had a ministerial duty to prevent loitering, based on the adoption of a Georgia Code section as School Board policy. The relevant Code section, former OCGA § 20-2-1180, provided in part: "Each principal of each public or private school in this state shall have the authority to exercise such control over the buildings and grounds upon which a school is located so as to prohibit any person who does not have a legitimate need or cause to be present thereon from loitering upon such premises." This Court held that the regulation did not impose a ministerial duty on the school principal and a teacher, that the acts of the teacher and principal required the exercise of discretion, and that they were thus protected by their derivative immunity. *Teston*, supra at 831.

Appellees contend the regulation here is too general in nature to create a ministerial, non-discretionary duty in Beck or Rewis *personally* to supervise or make specific repairs, and we agree. The regulation does not explicitly identify or define any conditions which constitute a hazard, nor does it prescribe a procedure or method for dealing with any hazards found. The "evaluat[ion]" or "ascertain[ment]" of a hazardous "situation," the methods used to "eliminate" or "avoid" it, and the carrying out of a "reasonable" safety program are left to the discretion of the school district employees. In sum, the language of the regulation itself shows that "the exercise of personal deliberation and judgment" will be involved. *Joyce*, supra at 96.[2]

The Hemaks also attempt to distinguish those cases involving *supervision* of *students* from those involving *maintenance or repair* of school *property*, asserting in essence that all decisions with regard to repair and maintenance are by definition ministerial. The Georgia courts, however, have never framed the issue of ministerial versus discretionary duties in terms of the subject matter of the duties. The central question is whether the act complained of "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citations and punctuation omitted.) *Teston*, supra at 830. If a decision calls for the exercise of such

---

[2] This is not necessarily true, however, of all regulations promulgated by the school board. For example, the regulation immediately following requires the use of eye safety devices in classes and activities involving specifically enumerated hazardous materials and procedures. It places responsibility for obtaining the devices on the principal and chairperson of the department involved and responsibility for using the devices on the teacher.

judgment, it is discretionary, regardless of whether the subject of the decision is students or school property. In fact, the leading *Hennessy* case itself involved the maintenance of school property, an allegedly hazardous rug and mat in a school doorway. *Hennessy*, supra at 329.

Because the duties involved in this incident were discretionary, the trial court correctly granted summary judgment to Beck and Rewis on the basis of their official immunity.

*Judgment affirmed. Birdsong, P. J., and Johnson, J., concur.*

DECIDED JANUARY 23, 1996 —
RECONSIDERATION DENIED FEBRUARY 7, 1996 — 

*O'Neal, Brown & Sizemore, Manley F. Brown, Philip M. Brown, John C. Clark, Robert S. Slocumb,* for appellants.

*Daniel, Lawson, Tuggle & Jerles, Tom W. Daniel, William R. Jerles, Jr., Adams & Hemingway, William P. Adams, F. Bradford Wilson, Jr.,* for appellees.