A97A1413. LIPTON v. WARNER, MAYOUE & BATES, P.C.
(492 SE2d 281)

Judge Harold R. Banke.

The law firm of Warner, Mayoue & Bates, P.C. (WM&B) sued Richard J. Lipton for past due legal bills. Enumerating three errors, Lipton appeals.

Richard E. Bates represented Lipton in a divorce action from February until September 21, 1992, when prior to the conclusion of the divorce proceedings, the trial court consented to the withdrawal of Bates and WM&B as counsel of record for Lipton. Lipton paid over $35,000 on his account, and WM&B sued for the outstanding balance. Lipton asserted that WM&B performed unauthorized legal services including work done by three attorneys other than Bates and four paralegals. He counterclaimed for, inter alia, fraud, misrepresentation, breach of fiduciary duty, conversion, slander or libel to title, and punitive damages. Lipton's counterclaims stemmed from two attorney liens which WM&B filed on real property which was

---

subject to the divorce action.

When Lipton retained Bates to represent him in the divorce action, he did not sign a written fee agreement with Bates or WM&B. Bates testified that Lipton agreed to compensate him and others at varying rates and agreed to reimburse WM&B for all out-of-pocket expenses including court costs. During the course of the representation, it is undisputed that Lipton received regular monthly billing from WM&B. WM&B's detailed invoices notified Lipton each month that he was being billed for services of other attorneys and paralegals, including the number of hours per staffer and the total dollar amount for each person. The billings demonstrate that WM&B associates and paralegals provided substantial work on a range of issues. According to Lipton, Bates withdrew as counsel after "I ran out of money to pay him." Lipton deposed, "I think he [Bates] was paid enough money, more than enough money."

According to the evidence, Lipton accepted legal services, was billed monthly for them, made partial payment, then refused to pay despite repeated requests for payment. The record contains no evidence that Lipton voiced any complaint concerning the accuracy of the billing until several years later when his account still remained unpaid. When asked if there was any specific billing entry that he contended was "inaccurate, inflated, or the services were not performed," Lipton responded, "Right now I can't say that there are." During his deposition, Lipton conceded that he could not dispute anything on any of the bills with any certainty.

The trial court determined that due to the absence of any genuine factual issues remaining to be tried on WM&B's action as well as on Lipton's counterclaim, WM&B was entitled to the principal amount of $50,577.84, prejudgment interest, attorney fees, court costs, and post-judgment interest. The court rejected Lipton's recusal motion. Lipton challenges all of these rulings. *Held*:

1. The trial court did not err in granting summary judgment to WM&B notwithstanding Lipton's defenses of accord and satisfaction, fraud, misrepresentation, and payment. It is undisputed that the debt remained unpaid. Attempting to avert summary judgment, Lipton offered his own affidavit. However, Lipton's testimony that he authorized only Bates to perform certain work is eviscerated by the billing documentation which shows that Lipton knew or should have known the exact nature of the services being performed by Bates as well as by others. A self-serving, conclusory affidavit not supported by fact or circumstances is insufficient to raise a genuine issue of material fact. *Brooks v. Boykin*, 194 Ga. App. 854, 856 (3) (392 SE2d 46) (1990). Moreover, that affidavit is plainly undercut by Lipton's deposition testimony, in which he admits he did not pay his bill and that he had no evidence of fraud or overbilling. See *Prophecy Corp. v.*

*Charles Rossignol, Inc.*, 256 Ga. 27, 30 (2) (343 SE2d 680) (1986) (self-contradictory testimony construed against equivocator, absent reasonable explanation). After WM&B presented evidence of the unpaid amount for services Lipton received and accepted, the burden shifted to Lipton to point to specific evidence giving rise to a triable issue. OCGA § 9-11-56 (e). This he failed to do. See *Wachovia Bank &c. v. Mothershed*, 210 Ga. App. 853, 854 (2) (437 SE2d 852) (1993).

2. The trial court did not err in dismissing Lipton's counterclaims for conversion, interference with the right to enjoyment of property, slander or libel of title to land, fraud, and punitive damages. All of Lipton's counterclaims hinged on the propriety of two attorney liens which WM&B filed on the real property four days prior to the entry of the final decree in the divorce action.

An attorney lien arises upon the attorney's employment and is perfected at the time of the ultimate recovery of the judgment by the client. *Ramsey v. Sumner*, 211 Ga. App. 202, 204 (3) (438 SE2d 676) (1993). Although Bates withdrew from representation prior to the final settlement, it is undisputed that Lipton obtained title of the real property pursuant to the divorce settlement. See *Hester v. Chalker*, 222 Ga. App. 783, 784 (1) (476 SE2d 79) (1996). The liens for attorney fees asserted against the real property which Lipton recovered pursuant to the divorce judgment were not unlawful. See OCGA § 15-19-14 (c). It therefore follows that Lipton's counterclaims challenging the correctness of these liens must necessarily fail.

3. Lipton was not entitled to have the trial judge recused. A motion for recusal must be both legally sufficient and timely. Uniform Superior Court Rule 25.1. *Harris v. State*, 202 Ga. App. 618, 622 (7) (414 SE2d 919) (1992). Lipton's motion was neither timely nor had the requisite affidavit mandated by USCR 25.2.

*Judgment affirmed. McMurray, P. J., and Smith, J., concur.*

DECIDED SEPTEMBER 15, 1997 — ▮

*Sabiston & Smith, Eric P. Sabiston*, for appellant.

*Irvin, Stanford & Kessler, Stephen M. Katz, Steven Montalto*, for appellee.