## A98A0441. CALDWELL v. GRIFFIN SPALDING COUNTY BOARD OF EDUCATION et al.
### (503 SE2d 43)

POPE, Presiding Judge.

Antwan Caldwell, a freshman on the Griffin High School varsity football team, was attacked and beaten by other members of the team during an apparent "initiation ritual" which took place at the team's summer football camp. To recover for Antwan's injuries, his father, Charles Caldwell, sued the Griffin Spalding County Board of Education (the "Board"), head football coach Lloyd Bohannon, and Griffin High School principal Larry White. The suit claimed that the Board, Bohannon, and White knew or should have known that these "initiations" were an annual event but failed to prevent the attack on Caldwell. The trial court granted summary judgment to the Board based on sovereign immunity and to Bohannon and White based on official immunity. Although Caldwell claims Bohannon and White were not entitled to official immunity,[1] we disagree and affirm the trial court's judgments.

Under a 1991 amendment to the Georgia Constitution, "the public officers and employees of the [Griffin Spalding] County Board of Education . . . are entitled to official immunity, regarding any cause of action averred against them in their private (individual) capacity, when they are sued for discretionary acts taken within the scope of their employment and without actual intent to injure. See generally [Ga. Const. 1983,] Art. I, Sec. II, Par. IX; [cits.]" *Crisp County School System v. Brown*, 226 Ga. App. 800, 802 (2) (487 SE2d 512) (1997). When a public employee is sued over his misperformance or nonperformance of a discretionary act, the employee may be held liable only where evidence shows he or she acted with "actual malice or with actual intent to cause injury in the performance of [his or her] official functions." Ga. Const. 1983, Art. I, Sec. II, Par. IX (d). The Supreme Court has determined that "actual malice" excludes any concept of "implied malice" or "reckless disregard" and means only "express malice or malice in fact." *Merrow v. Hawkins*, 266 Ga. 390, 392 (2) (467 SE2d 336) (1996).

---

[1] Caldwell does not appeal the grant of summary judgment to the Board.

Construed in favor of Caldwell, the evidence shows Antwan was a freshman who accompanied the football team to its 1994 annual summer camp at Troy State University in Alabama. According to affidavits provided by former football players, older players at each year's football camp traditionally "initiated" freshman players by "shaving [the] heads of first year players and general 'horseplaying,' such as trashing players' rooms." The evidence conflicts as to whether the coaching staff was aware of this tradition and implicitly condoned it, but no witness testified that the coaching staff or other school officials explicitly encouraged or approved this behavior. For the 1994 camp, players were housed in a dormitory with adult chaperones or coaches in rooms at the end of each hall. Bohannon testified that he warned the players that any horseplay would be punished. Nonetheless, during an afternoon break in activities a group of players, their faces masked, attacked Antwan in an empty dormitory room and beat him severely, knocking him unconscious and requiring hospital care. Antwan testified that he had witnessed other initiations that week and had seen older players shave younger players' heads, spray them with shaving cream, and mess up their rooms, but had not seen anyone physically attacked. In fact, no witness testified that any prior initiation had involved physical beatings such as the one Antwan sustained.

Applying the standards set forth in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), we affirm the grants of summary judgment. We first note that this case is one alleging the negligent failure of school officials to protect Antwan from an attack by other students. The appellate courts of this state have consistently held that the supervision of student safety is a discretionary function, the proper exercise of which entitles school officials to immunity. See *Kelly v. Lewis*, 221 Ga. App. 506, 508 (471 SE2d 583) (1996) (student who was attacked by a gang on his way to school alleged that school officials failed to enforce rules governing supervision of arriving students); *Teston v. Collins*, 217 Ga. App. 829, 830-831 (1) (459 SE2d 452) (1995) (student attacked by a visitor to school claimed officials failed to control third party visitors); *Guthrie v. Irons*, 211 Ga. App. 502, 506 (2) (439 SE2d 732) (1993) (student who was attacked by another student in hallway claimed teachers failed to follow policy which required they monitor halls), disapproved on other grounds, *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994).

Caldwell argues that a state criminal statute against hazing (OCGA § 16-5-61) transforms this discretionary policing function into a ministerial one and that Bohannon and White had a ministerial duty not to aid and abet the crime of hazing. A school official does not have legal discretion to participate in a crime or to allow students under his supervision to commit a crime. OCGA §§ 16-2-20 and 16-2-

21. Compliance with the law is mandatory, and in that sense arguably "ministerial." However, in this case there is no evidence that Bohannon and White were parties to a crime or allowed a crime to occur. Even assuming that the beating in this case amounted to criminal hazing, it is undisputed that this activity was unknown to Bohannon and White before and at the time it occurred, and that nothing had happened on that trip or in prior years to make it foreseeable that such conduct would transpire. Bohannon and White, therefore, could not be aiders and abettors to the hazing in this instance. OCGA § 16-2-20.

Moreover, in *Teston*, 217 Ga. App. at 830, we rejected a similar argument that a criminal statute governing the conduct of third parties created a ministerial duty in school officials to enforce that law. The plaintiff in that case argued that school officials had the ministerial duty to enforce the provisions of OCGA § 20-2-1180, which makes it unlawful for unauthorized persons to remain on a school campus. This Court rejected that argument, noting that the statute was directed at the offender and not at school administrators. Here likewise, OCGA § 16-5-61 makes anyone engaged in hazing guilty of an aggravated misdemeanor. But as in *Teston*, that prohibition merely gives "school [officials] discretionary authority to control [hazing]." Id.

Furthermore, no evidence in the record indicates Bohannon or White acted with "actual malice" towards Antwan. Caldwell's argument, at best, is one of "implied malice": that by failing to stop the prior incidents involving shaved heads and shaving cream attacks, Bohannon and White exhibited a reckless disregard for the rights of students such as Antwan by creating a climate in which this attack could occur. *Merrow* rejected this theory of liability. 266 Ga. at 392. Considering the lack of any evidence showing that either defendant actively condoned, encouraged, or took part in any of these initiation rites, or the violent attack on Antwan, Caldwell's claim of actual malice must fail.

*Judgment affirmed. Beasley, J., concurs. Ruffin, J., concurs specially.*

RUFFIN, Judge, concurring specially.

I concur with the Court's judgment, but only because I am compelled to do so by Georgia law. Moreover, I write separately to highlight certain facts in the record and to suggest that the appellate courts and the legislature reconsider whether supervision of students should be considered a discretionary rather than a ministerial act.

From my review of the record it is clear that the football summer camp was a school-sponsored event and Bohannon, the high school football coach, was responsible for supervising the players, including

Antwan Caldwell and his assailants. Four members of the football team provided affidavits, stating that "upperclassmen [were] allowed to haze first year football players," including Caldwell. All four members of the team stated that the "hazing consisted of incidents such as shaving heads of first year players and general 'horseplaying,' such as trashing players' rooms." One of the affiants stated that he was the target of the hazing and he informed Bohannon and other members of the coaching staff that he did not want to participate in this ritual. The three other affiants stated that "Coach Bohannon and the other members of the coaching staff were aware of these incidents and never attempted to stop them." One of the affiants added that he "was the recipient of this hazing on a couple of occasions and [he] was involved in a couple of fights as a result of these incidents."

Bohannon testified in a deposition that he had seen incidents where the players had their hair cut, but other than that, he had never seen any incidents of hazing. Bohannon said that he investigated Caldwell's attack, but did not investigate whether hazing was a routine part of the summer camp. He also admitted that after the Caldwell attack, he did not discuss hazing with the football players. Furthermore, while Bohannon said that at the beginning of the camp a lecture was given about camp procedures, he never stated that he or any other camp official spoke to the players about hazing. According to Bohannon, he only spoke with the players after the Caldwell attack about horseplay among teammates.

Given the above, I believe there is sufficient evidence to conclude that Bohannon was aware of the incidents and condoned them, despite the potential for harm. However, Georgia law is clear that "the general task imposed on teachers to monitor, supervise, and control students has . . . been held to be a discretionary action which is protected by the doctrine of official immunity. [Cits.]" *Wright v. Ashe*, 220 Ga. App. 91, 94 (469 SE2d 268) (1996). And as the majority points out, when an action is based on a discretionary act of a public employee, actual malice, which does not include implied malice or reckless disregard, must be shown. See Ga. Const. 1983, Art. I, Sec. II, Par. IX (d); *Merrow v. Hawkins*, 266 Ga. 390 (467 SE2d 336) (1996). In this case, Bohannon's conduct at most represents reckless disregard for the safety of his players; there is no evidence that Bohannon acted with the intent to harm Caldwell specifically. Accordingly, the majority is correct that under Georgia law Bohannon is entitled to official immunity.[2]

Nevertheless, the result in this case is troubling because school

---

[2] I do not address the school principal's liability, as I fully agree with the majority that there is no evidence to show that he acted with malice against Caldwell.

officials should not be immune from suit when they are in charge of supervising students and are acting in the place of the students' parents, but then fail to take precautionary measures to prevent students from being harmed by initiation rituals when the potential for harm is known to them. I suggest that the appellate courts, and more appropriately, the legislature revisit the issue of whether supervision of students amounts to a discretionary rather than a ministerial act. Moreover, we should consider Florida's stance on this subject, which is that "the duty to supervise high school students is generally ministerial in nature." *Rupp v. Bryant*, 417 S2d 658, 665 (Fla. 1982). See also *Wyke v. Polk County School Bd.*, 129 F3d 560, 570-574 (11th Cir. 1997).

"Florida case law recognizes the general duty of schools, principals and teachers to adequately supervise students placed within their care. [Cit.] 'The genesis of this supervisory duty is based on the school employee standing partially in place of the student's parents.' [Cits.]" *Leahy v. School Bd. of Hernando County*, 450 S2d 883, 885 (Fla. App. 1984).

In *Rupp*, the plaintiff, a high school student, sued the principal, faculty advisor and school board after the plaintiff suffered injuries in a hazing at an initiation ceremony of a school club. The Florida Supreme Court, in determining that supervision of high school students is a ministerial act, relied on the decisions of other jurisdictions. See *Larson v. Independent School Dist.*, 289 NW2d 112 (Minn. 1979); *Cook v. Bennett*, 288 NW2d 609 (Mich. 1979); *Salyers v. Burkhart*, 352 NE2d 156 (Ohio 1974). Because the actions of the faculty advisor and the principal in *Rupp* did not involve "discretion in the policy-making sense," neither could raise the shield of official immunity. *Rupp*, supra at 665.

The Florida Supreme Court in *Rupp* noted that "[a] public school, at least through the high school level, undoubtedly owes a general duty of supervision to the students placed within its care." Id. at 666. Finding that the officials owed a duty to the plaintiff, the Court addressed whether the failure to supervise the student club was the proximate cause of the plaintiff's injuries. The Florida Court adopted the standard that "certain student misbehavior is itself foreseeable and therefore is not an intervening cause which will relieve principals or teachers from liability for failure to supervise[.]" Id. at 668. The Court continued: "[w]e should not close our eyes to the fact that boys of seventeen and eighteen years of age, particularly in groups where the herd instinct and competitive spirit tend naturally to relax vigilance, are not accustomed to exercise the same amount of care for their own safety as persons of more mature years. Recognizing that a principal task of supervisors is to anticipate and curb rash student behavior, our courts have often held that a failure to prevent

injuries caused by the intentional or reckless conduct of the victim or a fellow student may constitute negligence." (Punctuation omitted.) Id. at 668-669 (citing *Dailey v. Los Angeles Unified School Dist.*, 470 P2d 360 364 (Cal. 1970)). From this vantage point, the Court held that "rough-housing or hazing at a high school club initiation is behavior which is not so extraordinary as to break the chain of causation between the school's failure to supervise and the injury to the student. [Cits.]" *Rupp*, supra at 669. Accordingly, a jury question remained whether the school's action or inaction was the proximate cause of the plaintiff's injuries resulting from the hazing.

All of the reasoning cited above is applicable in Caldwell's case. Rough-housing and hazing during a high school football summer camp is to be expected, and in this case, there is some evidence to show that Bohannon was aware or at least implicitly condoned the initiation rituals. Whether his failure (1) to supervise the teammates, (2) to warn them against hazing and the ramifications of such actions, and (3) to condemn such practices were the proximate causes of Caldwell's injuries is a jury question. Bohannon had the duty to adequately supervise his students placed within his care, as he was clearly standing partially in place of the students' parents. *Leahy*, supra.

I would follow the lead of Florida and other jurisdictions and conclude that Bohannon's duty to supervise high school students was a ministerial act rather than a discretionary one. See *Rupp*, supra. Again, however, the current status of Georgia law prevents this analysis. But I strongly urge the legislature and the appellate courts to revisit the issue of official immunity as it relates to the supervisory duties of schools and teachers. While an injury from playing football is to be expected, parents do not leave their children at school with the expectation that they will be improperly supervised or injured by hazing. Official immunity in this State allows teachers and coaches to turn a blind eye to actions by students that have the potential to harm other students and be free from liability. I do not believe that this should be the correct public policy in Georgia.

DECIDED JUNE 2, 1998 —
RECONSIDERATION DENIED JUNE 17, 1998 —

*Alvin L. Kendall, Lisa R. Roberts*, for appellant.
*Swift, Currie, McGhee & Hiers, James T. McDonald, Jr., Christopher D. Balch*, for appellees.