## A98A0971. HAZELWOOD v. ADAMS et al.
### (510 SE2d 147)

SMITH, Judge.

Thomas Hazelwood, a student at Coosa High School, brought this action against Rick Howard, the school's principal, and Steve Adams, the football coach, to recover for personal injuries suffered while he was being disciplined. The trial court granted both Howard's and Adams's motions for summary judgment, and Hazelwood appeals. For the reasons that follow, we do not consider the summary judgment granted in favor of Howard. We conclude, however, that the summary judgment in favor of Adams must be reversed because issues of fact remain for jury resolution regarding whether Adams acted with actual malice.

1. OCGA § 5-6-37 requires that the notice of appeal "shall set forth . . . a concise statement of the judgment, ruling, or order entitling the appellant to take an appeal." The trial court granted Howard's motion for summary judgment on August 28, 1997 and that of Adams on December 2, 1997. We recognize that a litigant has the option of appealing a grant of summary judgment that does not dispose of the entire case either at the time it is issued or at the conclusion of the litigation. *Culwell v. Lomas & Nettleton Co.*, 242 Ga. 242, 243 (248 SE2d 641) (1978); *McConnell v. Moore*, 232 Ga. App. 700, 701 (503 SE2d 593) (1998). But the litigant must still specify each order appealed. That was not done here. The notice of appeal recites that "Hazelwood hereby appeals . . . from the Order of the Superior Court of Floyd County, dated December 2, 1997," which is the order granting summary judgment to Adams. We therefore consider only that judgment. See *Blackwell v. Cantrell*, 169 Ga. App. 795 (1) (315 SE2d 29) (1984).

2. In reviewing the grant or denial of summary judgment, this court conducts a de novo review of the evidence. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996); *Gaskins v. Hand*, 219 Ga. App. 823, 824 (466 SE2d 688) (1996). Viewed under the standard of *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991),

with all inferences in favor of Hazelwood, the evidence showed that Hazelwood, a senior, participated in the 1995 "senior prank" at the high school. A group of students went to the campus during the evening of May 20, 1995. The group split in two, with one faction releasing live chickens into the school through a window that had been left unlocked. Four students, including Hazelwood, proceeded to the football field. There, one student, Leaser, removed a gasoline can from a storage shed. While Hazelwood and the others watched, Leaser poured the gasoline onto the center of the football field in an effort to make the figure "95". Leaser then lit the gasoline and the four students ran.

The students' identities were discovered eventually, and Hazelwood was required to take part in a workday at the school one Saturday along with all of the other prank participants. In addition, Principal Howard directed Hazelwood and Leaser to report to Coach Adams after school each day for a week to work under his direction as punishment for damaging the football field. Hazelwood was informed that if he did not fulfill this task, he would not be allowed to participate in graduation exercises. Howard instructed Adams that Hazelwood and Leaser were both to work five hours for him around the football field.

Hazelwood did not report to the coach on Monday, as directed. But he and Leaser did report on Tuesday. Upon arriving at the field, Leaser and Hazelwood were both given "rusty old" household scissors by Adams, and they were told to cut the weeds under the visitors' bleachers. Hazelwood offered to buy gasoline for the weedeater and use it, but Adams declined. Adams watched the boys cut grass for a few moments and then left to mow the field on a riding mower. The weeds were very thick and difficult to cut, and the two students cut the weeds for over an hour. Hazelwood attempted to kneel to cut the weeds, but Adams insisted that both boys stand while cutting and allowed no rest breaks. Hazelwood had blisters on his hand and his wrist was swollen when he arrived home. Hazelwood said his wrist began to hurt while he was cutting the weeds, but he did not tell Adams. His mother took him to the emergency room, where he was given a brace and pain medication. Thereafter, he was not required to do anything as discipline that involved his wrist. When he came to school with the brace on his wrist, however, Coach Adams made fun of him.

Adams raised the defense of official immunity. This defense applies to government officials and employees sued in their official capacities. *Hemak v. Houston County School Dist.*, 220 Ga. App. 110, 112 (469 SE2d 679) (1996). The immunity shields government officials and employees from acts that are discretionary, are done in the course of official duty, and are performed without wilfulness or

actual malice. It does not shield acts that are purely ministerial. Id.; *Gilbert v. Richardson*, 264 Ga. 744, 752 (6) (452 SE2d 476) (1994). In order to avoid summary judgment, therefore, Hazelwood must show either that Adams's acts in administering discipline to him were ministerial in nature or that they were done with wilfulness or actual malice.

(a) "A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." (Citations and punctuation omitted.) *Parrish v. Akins*, 233 Ga. App. 442, 443 (504 SE2d 276) (1998). "The task of school officials to monitor, supervise, and control students is a discretionary action protected by the doctrine of official immunity." (Citations and punctuation omitted.) *Payne v. Twiggs County School Dist.*, 232 Ga. App. 175, 177 (2) (501 SE2d 550) (1998). See also *Daniels v. Gordon*, 232 Ga. App. 811, 813 (2) (503 SE2d 72) (1998); *Wright v. Ashe*, 220 Ga. App. 91, 94 (469 SE2d 268) (1996).

In this case, the principal had initially decided no punishment was merited by the chicken incident because no damage was done to the building. After becoming aware of the fire damage to the football field, however, he decided he should learn the identities of the participating students and then discipline them, thereby demonstrating the discretionary nature of his actions. Upon identifying Hazelwood and Leaser, the principal called their parents and the police. After talking to Mrs. Hazelwood and the others, he decided to impose school discipline and did not pursue formal charges. Regarding the after school work, the type of work to be performed by the two students was left to the coach's discretion. The principal said: "I had turned that over to Coach Adams. [He] was to contact those two kids and make arrangements for them to do their time." It is apparent that Coach Adams's actions were discretionary in nature; they were dependent on his needs as a football coach, his judgment as to the work required for their five hours, and the need to punish the two boys for their actions.

Article I, Sec. II, Par. IX (d) of the Georgia Constitution provides that officials "may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions." Because Hazelwood made no allegation that Coach Adams acted with actual intent to cause injury, in this case Adams would be entitled to official immunity unless Hazelwood showed that he acted with actual malice.

(b) The Supreme Court has stated that in the context of official

immunity, as opposed to that of slander, the term " 'actual malice' requires a deliberate intention to do wrong." *Merrow v. Hawkins*, 266 Ga. 390, 391 (467 SE2d 336) (1996). The court noted that the term "actual malice" is found in the criminal law and is not typically used in civil litigation, and that the use of the modifier "actual" in the 1991 amendment to the Constitutional provision must be interpreted to exclude "implied malice," which is "conduct exhibiting a 'reckless disregard for human life.' [Cits.]" Id. at 392 (2).

The Constitution, however, also phrases the requirement in the disjunctive, requiring "actual malice" *or* "actual intent to cause injury" to defeat a defense of official immunity. *Teston v. Collins*, 217 Ga. App. 829, 830 (1) (459 SE2d 452) (1995). We therefore cannot assume that "actual malice" is identical to "actual intent to cause injury." As the Supreme Court noted in *Merrow*, Black's Law Dictionary defines "actual malice" as "express malice or malice in fact." *Merrow*, supra at 392. And "malice in fact" may be "[e]xpress *or* actual malice. Ill will towards a particular person." (Emphasis supplied.) Black's Law Dictionary 957 (6th ed. 1990).

With this definition in mind, we have reviewed the evidence presented, mindful of the purpose of the summary judgment procedure, which affords parties a prompt resolution of their case when the pleadings and all evidence properly considered, together with the reasonable inferences therefrom, show that no issue of material fact exists. It is intended to avoid unnecessary and useless trials and to filter out sham issues from those that are genuine. See *Bowers v. Jim Rainwater Builder &c.*, 203 Ga. App. 254, 255 (416 SE2d 832) (1992); *Boston Ins. Co. v. Barnes*, 120 Ga. App. 585, 589 (171 SE2d 626) (1969). In this case, we conclude that the issue of whether Adams acted with actual malice is a genuine issue.

Hazelwood's testimony, while it may have been slightly confusing, shows that he believed Coach Adams acted with ill will towards him. A reasonable person, or a jury, might well agree. Certainly, some punishment was appropriate for a senior prank that at least temporarily destroyed school property. But Hazelwood testified that the coach had called him a "pussy" for damaging the football field and had made cutting motions with his hand directed at Hazelwood while Hazelwood was in study hall prior to reporting. He also testified that Adams had engaged in "constant badgering" of him, even before the senior prank. Hazelwood testified on his deposition that he had been in the coach's biology class and the coach verbally and physically abused him and "got a real big kick out of it." In his affidavit, however, Adams stated that Hazelwood was never in his class, and the only knowledge he had of Hazelwood was as a member of the school basketball team. Adams stated he did not "haze, harass, ridicule, insult or belittle" Hazelwood or call him names, but Hazelwood

testified that Adams called him a "pussy." The testimony from Hazelwood was not so self-contradictory that it entitled the trial court to disregard it. And a reasonable inference arising from Hazelwood's testimony is that Adams may have been acting with ill will.

Other evidence, some of which was undisputed, and the reasonable inferences drawn from that evidence also suggest ill will: Adams's choice of rusty, dull scissors for cutting the weeds; his insistence that Hazelwood stand while cutting the weeds; and his refusal to allow Hazelwood to buy gas for the weedeater. The possibility of ill will is also suggested by Hazelwood's testimony that when he came to school with a brace on his wrist after injuring it carrying out Adams's assignment, Adams made fun of him. A reasonable inference from this evidence is that Adams had more on his mind than having the weeds cut despite having no fuel for the weedeater, as he testified.

If Adams is to rely on the official immunity granted him as a public school teacher to obtain a summary judgment, he must show without dispute that he acted properly in such a position of public trust. Here, the evidence raises a question of whether he did so. This evidence differs from that presented in the other school cases, where no actual malice was found. See, e.g., *Daniels v. Gordon*, supra (teacher merely grasped face of disruptive student momentarily, to ensure he was looking at her); *Crisp County School System v. Brown*, 226 Ga. App. 800 (487 SE2d 512) (1997) (teacher merely instructed student "to try" after student told teacher she did not believe she could traverse monkey bars); *Caldwell v. Griffin Spalding County Bd. of Ed.*, 232 Ga. App. 892 (503 SE2d 43) (1998) (physical precedent only) (issue was school officials' knowledge of football team hazing).

Here, in contrast, evidence was presented which, if believed, showed that a teacher previously engaged in bullying behavior and that he intentionally devised a punishment that was not only demeaning but had the potential to hurt the student. Of course, this testimony was disputed; Coach Adams denied that he "badgered" Hazelwood. Indeed, he denied even knowing him personally. The trial court apparently chose to resolve this conflict, and this was error. A jury must decide this issue. We therefore reverse the trial court's grant of summary judgment to Coach Adams.

*Judgment reversed. Pope, P. J., Johnson, P. J., Beasley, Ruffin, JJ., and Senior Appellate Judge Harold R. Banke concur. Andrews, C. J., dissents.*

ANDREWS, Chief Judge, dissenting.

While I concur fully in Divisions 1 and 2 (a) of the majority, I must respectfully dissent to Division 2 (b), because I believe that there is insufficient evidence of actual malice on the part of Coach

Adams toward Hazelwood to merit a trial and that he was entitled to summary judgment.

I note that, although the 1991 amendment to Art. I, Sec. II, Par. IX of the Georgia Constitution provides that officials may be liable if they act with "actual malice *or with actual intent to cause injury* in the performance of their official functions[,]" Hazelwood made no allegation that Coach Adams acted with actual intent to cause injury, only that he "acted intentionally, deliberately, knowingly and/or with careless disregard for the consequences thereof" in assigning Hazelwood to cut grass with dull scissors, an allegation that amounts, at most, to implied malice, not actual intent to cause injury.

In support of his motion for summary judgment, Adams submitted his unequivocal statement that he did not intend to injure Hazelwood, had no reason to believe that this use of scissors would injure him, and "did not act out of anger, vengeance or malice."

In addition to the facts set out in the majority, Hazelwood's testimony in May 1997 regarding the issue of malice and intent to injure is set out in detail here: "Q. [W]hat facts or information do you have that Coach Adams intentionally gave you the scissors with the idea that you would hurt your wrist? . . . A. They weren't grass shears — cutting — for grass or garden tools at all. They were school scissors to cut paper. Q. But is it your testimony that Coach Adams gave you the scissors intending to hurt you? A. I believe so. Q. Why? A. They were dull and just old, like the worst pair of scissors you ever seen — possibly could imagine to give someone to cut grass with. Q. [I]t's your opinion that he gave you the scissors with the express purpose of hurting your wrist? A. *Maybe not to hurt my wrist but to somewhat teach me a less[on] in his mind. Q. So maybe he was negligent and careless, too, like the principal? A. Yes. Q. So it's your contention that in giving you the dull scissors and telling you to cut grass with dull scissors he was negligent? A. Yes. Q. And he was careless? A. Correct. Q. And he shouldn't have done that? A. Correct. Q. But as far as giving you the scissors with the sole purpose of injuring your wrist or any other part of your body, you don't believe he did that? A. He wouldn't probably — would not know what was going to happen.*" (Emphasis supplied.)

Additionally, Hazelwood had given an earlier deposition in his federal lawsuit in December 1996. There, he testified: "Q. Do you know that he was being merely negligent or careless, or do you feel that he was being malicious and intentional in what he did to you? A. Yes. . . . Q. And the basis for that is what? A. He thought about what he was going to do before he did it. Premeditated. Q. In other words, the motioning to you at some time before the scissors incident . . . and then him actually having you do it that day indicates to you intentional or malicious — A. Yes. Q. Is there anything else that goes

into the feeling that he was intentional or malicious as opposed to merely being careless or negligent? A. Just the constant badgering that he did on me that I figured he didn't like me. So I knew that there was going to be some type of punishment, severe punishment, that I would have to do. . . . *Q. Do you have any reason to know or to suspect that Coach Adams could anticipate that you would have seriously injured yourself when he handed you the scissors and told you to go cut the weeds and the grass with the scissors? . . . A. Well, I don't think he would have done it if he didn't think that it wouldn't have hurt me somehow. But I don't think he knew what, you know, was going to happen.*" (Emphasis supplied.)

At best, this testimony is self-contradictory. "*Prophecy Corp.* [*v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986)] stands for the position that self-contradictory testimony is construed against the equivocator, absent a reasonable explanation for the contradiction. Id., 256 Ga. at 30 (2). The holding . . . is based on directed verdict and summary judgment cases which clearly state that the opposing party is entitled to judgment only where the favorable portion of the party's self-contradictory testimony 'is the *only* evidence of his right to recover. . . .' (Emphasis supplied.) Id. at 28 (1)." *Korey v. BellSouth Telecommunications*, 269 Ga. 108, 109 (498 SE2d 519) (1998). See also *Lipton v. Warner, Mayoue &c.*, 228 Ga. App. 516, 517 (1) (492 SE2d 281) (1997).

Here, unlike in *Korey*, there is no other evidence of malice put forth except Hazelwood's testimony. Even assuming, however, that this testimony is not contradictory, the most that it shows is that Coach Adams and Hazelwood had a bad relationship and that the coach used a method of cutting grass that was more punishment than intended to accomplish the task of cutting the grass and weeds. This is legally insufficient to show actual malice.

In *Merrow v. Hawkins*, 266 Ga. 390 (467 SE2d 336) (1996), the trial court had denied summary judgment on the ground of official immunity because, while the defendant had not acted with ill will or actual intent to injure, there had been a showing of reckless disregard for the safety of others. In rejecting this standard, the Supreme Court found that "in that context [official immunity], '*actual malice*' *requires a deliberate intention to do wrong.* . . . While we recognize that our courts have defined 'malice' as involving reckless disregard for the rights of others, [cits.], it is 'actual malice,' not mere 'malice,' that is addressed in the 1991 amendment to Art. I, Sec. II, Par. IX. *We find the term 'actual malice,' as set forth in the 1991 amendment, to denote 'express malice or malice in fact.' Black's Law Dictionary, 6th ed. (1990). Express or actual malice . . . is found in criminal law and has long been distinguished from 'implied malice,' a term which has been defined to mean conduct exhibiting a 'reckless disregard for*

*human life.'* [Cits.]" (Emphasis supplied.) Id. at 391, 392 (2). See also *Smith v. Little*, 234 Ga. App. 329 (506 SE2d 675) (1998).

Actual malice does not encompass conduct exhibiting a reckless disregard for human life or the safety of others, which is the most that Hazelwood has alleged and shown. *Daniels v. Gordon*, 232 Ga. App. 811 (503 SE2d 72) (1998); *Crisp County School System v. Brown*, 226 Ga. App. 800 (487 SE2d 512) (1997); *Caldwell v. Griffin Spalding County Bd. of Ed.*, 232 Ga. App. 892 (503 SE2d 43) (1998).

Therefore, I believe summary judgment for Coach Adams was appropriate and should be affirmed.

DECIDED DECEMBER 4, 1998 ▪▪▪▪▪▪▪

*Mundy & Gammage, John S. Husser*, for appellant.
*Law Offices of Richard W. Littlefield, Jr., Steven J. Misner, Donald J. Grate*, for appellees.

