**FIFTH DIVISION**
**PHIPPS, P. J.,**
**DILLARD and PETERSON, JJ.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules**

**November 4, 2016**

# In the Court of Appeals of Georgia

A16A1194. BARNETT et al. v. ATLANTA INDEPENDENT
SCHOOL SYSTEM et al.

PETERSON, Judge.

Jena Barnett and Marc Antoine Williams ("Appellants") filed a wrongful death suit against Phyllis Caldwell, alleging that leaving students unsupervised in her classroom in violation of a school policy caused the death of Appellants' child, Antoine Williams. The trial court granted summary judgment to Caldwell and denied Appellants' partial motion for summary judgment, concluding that the claim against Caldwell in her individual capacity involved a discretionary act for which she was entitled to official immunity. Appellants appeal and argue that the trial court erred because the school policy barring teachers from leaving students unsupervised in a classroom created a ministerial duty to which official immunity did not apply.

Because well-established precedent makes clear that decisions relating to the control and supervision of students are discretionary actions for which teachers are entitled to official immunity, we are left no choice but to affirm the trial court's grant of summary judgment to Caldwell.

"On appeal from the grant of summary judgment, this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." *Leone v. Green Tree Servicing, LLC*, 311 Ga. App. 702, 702 (716 SE2d 720) (2011) (footnote omitted).

So viewed, the evidence shows that on October 14, 2008, Caldwell was an Atlanta Public Schools ("APS") teacher working at Benjamin E. Mays High School. Caldwell's classroom was in a cluster system that shared a common entrance with the classroom of another teacher, Gibril Kanu, and their classrooms were divided by a bifold wall. Antoine Williams was a student in Caldwell's seventh-period American Literature class.

At approximately 2:45 p.m. on October 14, Caldwell left the classroom. During the time that Caldwell was gone, Williams and another student engaged in horseplay that caused Williams to fall to the floor with the other student landing on top of him.

Williams subsequently collapsed and was lying unconscious on the ground in the classroom when Caldwell returned at about 3:15 p.m. Caldwell called 911 because Williams appeared to be in distress. Emergency medical technicians took Williams to Grady Memorial Hospital, where he was pronounced dead. The medical examiner determined that Williams died from blood loss resulting from the laceration of a major blood vessel caused by a dislocated collarbone.

After Williams was pronounced dead, the school principal called Caldwell and other school staff into his office to get details about the incident. Caldwell lied, telling the principal that she was in the classroom the entire time. Caldwell reported that she stopped some horseplay, but observed no activity out of the ordinary. She told the principal that Williams complained about his nose bleeding and fell to the ground when he tried to stand.

A few days later, however, the principal learned that Caldwell was not in the classroom when Williams collapsed. A subsequent investigation by an independent company hired by APS also concluded that Caldwell was away from her classroom when Williams was injured.[1] After discovering that Caldwell had lied about being in

---

[1]On appeal, Caldwell challenges the "summary and synthesis" of the investigator's report. There is no dispute that the investigation was commissioned by APS as a regular course of business, and Caldwell conceded below that the

3

the classroom, the principal confronted Caldwell about her misrepresentations. Caldwell admitted that she was not in the classroom during the time of the incident and gave several different explanations for leaving the room. Caldwell told the principal that she left (1) to use a telephone, (2) to make copies of papers, or (3) to find another student. The principal deposed that it had never been made clear to him why Caldwell left her classroom.

In her deposition, Caldwell stated that she left her classroom to use the faculty restroom located down the hall from her classroom. Caldwell deposed that, before she left, she asked Kanu to "look out" or "listen" for her class, and that she had asked Kanu to do this on previous occasions. Caldwell stated that she did not specifically

investigator was hired to find facts. Under OCGA § 24-8-803(8)(c), factual findings resulting from an investigation made pursuant to authority granted by law are admissible in civil proceedings, unless the sources of information or other circumstances indicate a lack of trustworthiness. There is no dispute that the independent investigator relied on the statements of several witnesses who have not testified in this case, but there is no challenge, either by Caldwell or by Appellants, that these sources of information were unreliable or lacked trustworthiness. Therefore, the investigator's report is admissible and competent evidence. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162-70 (109 S. Ct. 439, 102 LE2d 445) (1988) (holding that portions of investigatory reports containing findings admissible under Federal Rule of Evidence 803(8)(A)(iii), the federal counterpart to OCGA § 24-8-803(c), are not inadmissible merely because they state a conclusion or opinion). APS did not accept the independent investigator's opinion that Caldwell left the classroom unsupervised, but otherwise had no issue with the investigator's investigation, and it relied on the investigator's report to take subsequent actions.

recall asking Kanu to go into her classroom, and she admitted that she did not see him go into her class, as Kanu remained seated as his desk when she left. The independent investigator, who talked with Kanu as well as Caldwell, found that Caldwell did ask Kanu to monitor her class and that Kanu did so from his adjoining classroom. Kanu was not deposed in this case.

Caldwell further stated that she returned to the classroom at about 3:00 p.m., heard that students had been "horsing around" in her classroom, saw Williams sitting at his desk, and then left her classroom again to search for students who were no longer there. Caldwell stated that she returned to the classroom for the second time at 3:15 p.m., at which point she saw Williams on the floor. Caldwell admitted that she did not ask Kanu or anyone else to listen out for her classroom when she left the second time.

Appellants filed this wrongful death suit against Caldwell, alleging that Caldwell was liable in her individual capacity because she left her classroom unsupervised in violation of violation Section 6.5 of the Benjamin E. Mays High School Faculty and Staff Handbook ("Section 6.5"). Section 6.5 provides:

The classroom teacher is solely responsible for the supervision of any student in his or her classroom. Students are **never** to be left in the classroom unsupervised by an APS certified employee.

(emphasis in original). Caldwell told the investigator that she was aware of the policy.

The trial court granted summary judgment to Caldwell, concluding that the allegations of negligence involved a duty to supervise students in her classroom, and thus her absence was a discretionary act entitled to official immunity. This appeal followed.

Appellants argue that Caldwell was not entitled to official immunity because she violated a clear and unambiguous school policy, Section 6.5, that imposed an absolute and definite duty to not leave students in her classroom unsupervised. But the complained-of act relates to Caldwell's responsibility to ensure the supervision of her classroom, a function that we have repeatedly held is entitled to official immunity.

The official immunity afforded to teachers arises from subsection (d) of the 1991 amendment to Art. I, Sec. II, Par. IX of the 1983 Georgia Constitution. *See Coffee Cty. School Dist. v. Snipes*, 216 Ga. App. 293, 296 (454 SE2d 149) (1995);

6

*Daniels v. Gordon*, 232 Ga. App. 811, 813 (2) (503 SE2d 72) (1998). Subsection (d) pertinently provides that public employees

> may be liable for injuries and damages if they act with actual malice or with actual intent to cause injury in the performance of their official functions. Except as provided in this subparagraph, officers and employees of the state or its departments and agencies shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions.

In *Gilbert v. Richardson*, 264 Ga. 744 (452 SE2d 476) (1994), the Supreme Court of Georgia held that the term "official functions" means "any act performed within the officer's or employee's scope of authority, including both ministerial and discretionary acts." 264 Ga. at 753 (6). Subsection (d) thus "provides no immunity for ministerial acts negligently performed or for ministerial or discretionary acts performed with malice or an intent to injure. It, however, does provide immunity for the negligent performance of discretionary acts[.]" *Id.*

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

7

*McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009) (citation omitted). "Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises." *Grammens v. Dollar*, 287 Ga. 618, 620 (697 SE2d 775) (2010) (citations and punctuation omitted).

Although discerning the line between ministerial and discretionary duties is sometimes difficult, it is well-established that the task of supervising and controlling students is a discretionary act entitled to official immunity. *See, e.g.*, *Wright v. Ashe*, 220 Ga. App. 91, 94 (469 SE2d 268) (1996) ("[T]he general task imposed on teachers to monitor, supervise, and control students has . . . been held to be a discretionary action which is protected by the doctrine of official immunity."). And this immunity applies "even where specific school policies designed to help control and monitor students have been violated." *Chamlee v. Henry Cty. Bd. of Educ.*, 239 Ga. App. 183, 184 (1) (521 SE2d 78) (1999); *see also Perkins v. Morgan Cty. Sch. Dist.*, 222 Ga. App. 831, 836 (2) (476 SE2d 592) (1996).

Appellants argue that Section 6.5 created a ministerial duty and Caldwell was not entitled to official immunity for failing to comply with the policy. Although a ministerial duty may be established by a written policy, *see Roper v. Greenway*, 294

8

Ga. 112, 114-15 (751 SE2d 351) (2013) (citations omitted), the existence of a written policy does not automatically create a ministerial duty, *see Davis v. Effingham Cty. Bd. of Comm'rs*, 328 Ga. App. 579, 585 (2) (760 SE2d 9) (2014). When analyzing whether a public employee's act or omission from which liability arises is a ministerial or discretionary act, our determination "depends on the *character* of the specific actions complained of, not the general nature of the job[.]" *McDowell*, 285 Ga. at 594 (citation omitted; emphasis added); *see also Daley v. Clark*, 282 Ga. App. 235, 238 (2) (638 SE2d 376) (2006). Here, Caldwell did just enough for her actions to be discretionary.

Caldwell asked her neighboring teacher to "listen out" for her class when she left the first time,[2] and it is not disputed that the horseplay that led to Williams's death occurred during Caldwell's first departure. Caldwell's request evidenced an exercise of discretion related to the supervision of her students – her reaching the conclusion that the neighboring teacher's "listening" was sufficient supervision for the time

---

[2] If Caldwell's testimony was the only evidence of that request, we might have to reverse, since Appellants challenge her credibility and we cannot resolve such challenges on summary judgment. But that is not the only evidence: the investigator found that she did make that request, and reached that conclusion based on talking with the neighboring teacher. Appellants do not challenge the investigator's findings. Accordingly, the fact that she made that request of the neighboring teacher is not legitimately disputed.

during which she was absent from the classroom. *See Grammens*, 287 Ga. at 620-21 (affording official immunity to teacher because a school policy requiring the use of protective eyewear during activities involving "explosive materials" did not define the term "explosive materials" and thus "the policy required the instructor to engage in a discretionary act, i.e., to exercise personal deliberation and judgment by examining the facts and reach a reasoned conclusion with regard to the applicability of the dictates of the written policy"). And although Caldwell's conclusion was tragically wrong, second-guessing her determination is the very sort of thing that official immunity prohibits. *See id.* at 619 ("The rationale for [official] immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight.") (citation omitted); *Guthrie v. Irons*, 211 Ga. App. 502, 507 (2) (439 SE2d 732) (1993) (concluding that teachers faced with many judgment calls in determining the means to supervise children "should not be deterred or intimated by the constant threat of personal liability" for exercising their professional judgment), *disapproved on other grounds by Gilbert*, 264 Ga. at 750.

We are sympathetic to Appellants' concerns about our case law conferring "de facto absolute immunity for school employees." *McDowell*, 285 Ga. at 594 (citation

10

omitted). And if the facts here were different, we might rule differently.[3] But Section 6.5 does not impose "simple, absolute[,] and definite" mandatory responsibilities of the sort at issue in *McDowell*. There, a school policy mandated that school personnel were not to release a student without consulting the student's information card to determine whether the person picking up the student was authorized to do so; the school employee did not look at the information card before releasing the plaintiff's child. *Id.* at 592. No discretion or judgment was involved at all in *McDowell*, and therefore the school employee was not entitled to official immunity.

Accordingly, we affirm the grant of summary judgment to Caldwell.

*Judgment affirmed. Phipps, P. J., and Dillard, J., concur*.

---

[3]Caldwell suggests that a total failure to comply with Section 6.5 would nevertheless be a discretionary act entitled to official immunity. We view such an argument through skeptical eyes, because a total failure to perform an act may involve no exercise of discretion or deliberation whatsoever, and it is not clear that such a failure would be considered a discretionary act covered by official immunity. But given our resolution of this appeal, it is not necessary to decide this question.

ON MOTION FOR RECONSIDERATION

Appellants have moved for reconsideration, arguing that we overlooked material evidence that the principal explained to teachers that Section 6.5 required "a classroom teacher's proximity within the classroom and that students should not be out of your eyesight," and that Caldwell's conduct following the fatal incident supports a finding that she was aware she violated the policy. Regardless of whether Caldwell violated the policy as explained to her, binding precedents of our Court are clear that discretionary decisions related to supervision are entitled to official immunity "even where specific school policies designed to help control and monitor students have been violated." *Reece v. Turner*, 284 Ga. App. 282, 286 (1) (643 SE2d 814) (2007) (citing cases; punctuation omitted). And, as our opinion explains, the evidence does show that Caldwell exercised her discretion related to supervision.

*Motion for reconsideration denied*.