302 Ga. 845
FINAL COPY

S17G0641.  BARNETT et al. v. CALDWELL.

GRANT, Justice.

High school student Antoine Williams tragically died after engaging in horseplay with another student while his teacher was out of their classroom. Appellants Jena Barnett and Marc Antoine Williams, Antoine's parents, filed a complaint against Appellee Phyllis Caldwell, who was Antoine's teacher at the time of his death. They alleged that Caldwell was liable in her individual capacity for Antoine's wrongful death because she had been negligent in supervising his classroom. The trial court granted Caldwell's motion for summary judgment, concluding that she was entitled to official immunity because her acts were the product of discretionary decisions concerning the supervision of students. The Court of Appeals affirmed. *Barnett v. Atlanta Independent School System*, 339 Ga. App. 533 (792 SE2d 474) (2016). We granted certiorari to consider this ruling. We conclude that student supervision is not unalterably discretionary in all respects, but here, because

the school's policy was not so definite as to render Caldwell's actions ministerial, she is entitled to official immunity. We therefore affirm.

I.

On appeal from the grant of summary judgment, legal questions are reviewed de novo, *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 477 (574 SE2d 585) (2002), and this Court also conducts a de novo review of the evidence, viewed in the light most favorable to the nonmoving party, to determine if there is a genuine issue of material fact. *Shekhawat v. Jones*, 293 Ga. 468, 469 (746 SE2d 89) (2013). So viewed, the evidence shows as follows.

On the afternoon of October 14, 2008 at Benjamin E. Mays High School, teacher Phyllis Caldwell left her classroom. Caldwell's classroom was in a cluster system that shared a common entrance with the classroom of another teacher, Gibril Kanu, and their classrooms were divided by a bifold wall. Antoine Williams was a student in Caldwell's seventh-period class, the final class of the school day. At approximately 2:45 p.m., Caldwell asked Kanu to "listen out" for her class, and left the classroom—for what purpose, it remains unclear. The rooms were connected, but Kanu could not see into Caldwell's

classroom from where he sat. There was also a hall monitor who was a retired assistant principal nearby, but Caldwell chose not to ask the hall monitor to supervise the class.

While Caldwell was gone, Antoine and another student engaged in horseplay that caused Antoine to fall to the floor; the other student landed on top of him. Antoine subsequently collapsed and was lying unconscious on the ground when Caldwell returned to the classroom at about 3:15 p.m.[1] Caldwell called 911. Emergency medical technicians took Antoine to the hospital, where he was pronounced dead. The medical examiner determined that he died from blood loss resulting from the laceration of a major blood vessel by a dislocated collarbone.

After he learned that Antoine had been pronounced dead, the school principal called Caldwell and other school staff into his office to get details about the incident. Caldwell told the principal that she was in the classroom the entire time. But a few days later, he learned that Caldwell was in fact not in the classroom when Antoine collapsed, and a subsequent investigation carried out by an independent company also concluded that Caldwell was away

---

[1] There is conflicting evidence as to whether Kanu ever came into the classroom to tell the students to stop their activities.

from her classroom when Antoine was injured. When the principal confronted Caldwell about her lie, Caldwell gave several different explanations for why she left the classroom — to use the telephone, to make copies, and to find another student. Later, in her deposition, Caldwell said she left the classroom to use the restroom.

Section 6.5 of the school's faculty handbook provides supervision guidelines for teachers: "The classroom teacher is solely responsible for the supervision of any student in his or her classroom. Students are **never** to be left in the classroom unsupervised by an APS certificated employee." (Emphasis in original.) Nowhere does the faculty handbook define "supervise" or "unsupervised." Caldwell, though, was aware of the policy, and the principal explained that supervision means "close proximity to" students, and told investigators that he had provided examples to teachers demonstrating that students should not be out of their eyesight. He believed the policy was unambiguous and nondiscretionary, and emphasized that school employees would be disciplined if they did not follow it. He also acknowledged, however, that there could be circumstances requiring a teacher to leave a classroom, including for up to 15 minutes. He further stated that a teacher (or another certified employee) may be able

to supervise students even if the teacher could not see them; instead, if the teacher could hear and have a "general understanding" of what was going on in a classroom, that "would still constitute supervision." The principal at one point summarized the policy as requiring "a visible, auditory or physical awareness of what someone is doing at a particular time."

After Antoine's death, his parents sued Caldwell, among others, for wrongful death based on negligent supervision, alleging that she was liable in her individual capacity because she left her classroom unsupervised in violation of the school's policy. The trial court granted summary judgment to Caldwell, concluding that because the allegations of negligence involved a duty to supervise students in the classroom, her absence was a discretionary act entitled to official immunity. The Court of Appeals affirmed, holding that "well-established precedent makes clear that decisions relating to the control and supervision of students are discretionary actions for which teachers are entitled to official immunity." *Barnett*, 339 Ga. App. at 533. This Court thereafter granted the parents' petition for certiorari, posing a single question: Did the Court of Appeals err in concluding that the classroom teacher in this case was entitled to official immunity?

## II.

The question of whether Caldwell can be held liable for a violation of the school's policy on supervision turns on the doctrine of official immunity. That immunity, originally a creature of case law in Georgia, see *Gilbert v. Richardson*, 264 Ga. 744, 752 (452 SE2d 476) (1994), now arises out of Article I, Section II, Paragraph IX (d) of the Georgia Constitution, which establishes that public employees may be subject to suit for negligent performance or nonperformance of their "ministerial functions" or "if they act with actual malice or with actual intent to cause injury in the performance of their official functions"; otherwise, they "shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance or nonperformance of their official functions." Put more plainly, teachers may be held personally liable for negligence relating to their official duties only when performing "ministerial" acts; "discretionary" acts are only subject to suit when performed with actual malice or intent to cause injury. *McDowell v. Smith*, 285 Ga. 592, 593 (678 SE2d 922) (2009); *Daniels v. Gordon*, 232 Ga. App. 811, 813 (503 SE2d 72) (1998); *Davis v. Dublin City Bd. of Ed.*, 219 Ga. App. 121, 122 (464 SE2d 251) (1995).

Accordingly, in cases like this one where there is no evidence of malice or intent to injure, the determination of whether official immunity bars the suit against the defendant turns on the issue of whether the defendant's actions were discretionary or ministerial. *McDowell*, 285 Ga. at 593. We have defined a ministerial act as "commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty." *Murphy v. Bajjani*, 282 Ga. 197, 199 (647 SE2d 54) (2007). A discretionary act, on the other hand, "calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed." Id.

The Court of Appeals has long held that student supervision is typically a discretionary function. See, e.g., *Leake v. Murphy*, 274 Ga. App. 219, 225 (617 SE2d 575) (2005), overruled on other grounds by *Murphy*, 282 Ga. at 199; *Butler v. Doe*, 328 Ga. App. 431, 433 (762 SE2d 145) (2014). But the determination of whether the action at issue is discretionary or ministerial is made on a case-by-case basis, and the dispositive issue is the character of the specific actions complained of, not the general nature of the job. *McDowell*, 285 Ga. at 594-595. In short, "the important question in the

context of official immunity is not merely whether an officer owed a duty of care, but rather, whether the official owed a duty that is particularized and certain enough to render her duty a ministerial one." *Eshleman v. Key*, 297 Ga. 364, 367 (774 SE2d 96) (2015).

Even in the context of functions that are typically discretionary, a written (or unwritten) policy, a supervisor's specific directive, or a statute may establish a ministerial duty—but only if the directives are so clear, definite, and certain as to merely require the execution of a specific, simple, absolute, and definite duty, task, or action in a specified situation without any exercise of discretion. *Roper v. Greenway*, 294 Ga. 112, 114-115 (751 SE2d 351) (2013); *Grammens v. Dollar*, 287 Ga. 618, 620 (697 SE2d 775) (2010); *McDowell*, 285 Ga. at 593-594. As we said in *Eshleman*, "even when an officer clearly owes a duty of care and is absolutely required to do *something*, unless she has been commanded—by law or by the policy or directive of her employer—to do a *particular thing*, she still is engaged in the performance of a discretionary function." 297 Ga. at 366 (emphasis in original). It is undisputed that the complained-of actions in this case related to student supervision, typically a discretionary function. So the question here is whether the school's policy—or the principal's interpretation of that policy

as expressed to Caldwell and other teachers—was so clear, definite, and certain in directing Caldwell's actions that it established a ministerial duty requiring no exercise of discretion whatsoever. This the plaintiffs cannot show.

To begin, the terms "unsupervised," "supervise," or "supervision" are not defined or otherwise explained anywhere in the policy or handbook. See *Grammens*, 287 Ga. at 620-621 (holding teacher shielded by official immunity because school policy did not define key term, therefore requiring teacher to exercise discretion in implementation of the policy). Offering no specificity in the general duty of student supervision, the written policy cannot be read to require an absolute or definite duty of teachers to be physically present in the classroom, having their students within eyesight at all times. Cf. *Eshleman*, 297 Ga. at 367, 369. Indeed, common experience tells us that there can be a wide range of appropriate supervision in different contexts. Moreover, the policy does not state that a teacher may never leave the classroom, but allows that a teacher may do just that, so long as the students are supervised "by an APS certificated employee."

Nor do the principal's statements to the private investigator that the policy was explained to teachers by telling them that they "should never leave

students unsupervised," and demonstrating that students should not be the teacher's eyesight reveal sufficient clarity. Although his explanations provide some additional direction regarding the school's expectations, the principal's instructions and examples are not enough to render the otherwise general policy sufficiently specific and definite. That fact is evidenced by the principal's acknowledgement in his deposition that a teacher could leave a classroom unsupervised "[i]f a teacher had an emergent situation and she had to run out of the classroom to a restroom or something," and in his statement that although it "would not be the ideal situation," it "would still constitute supervision" if a teacher was not able to see her students but could hear and have a "general understanding of what is going on in that classroom." It is true that the principal also stated that the policy was unambiguous in its requirements, but his opinion does not make it so.

Under both the text of the handbook and the explanation of the principal, the policy calls for a teacher to exercise personal deliberation and judgment in determining whether to leave a classroom, and if so, how to go about providing for supervision of the class during the absence. That sort of room for discretion is meaningful. See, e.g., *Eshleman*, 297 Ga. at 369 (explaining that officer required to take reasonable measures to restrain police dog must exercise

personal deliberation and judgment in deciding how much of a danger dog presented; if fence was sufficient; how high fence needed to be; if tether was required; whether rope or chain was strong enough; how to protect visitors; and what sort of portable kennel was sufficient to restrain dog during transport). Caldwell had to examine the facts before her—why she needed to leave her classroom, the amount of time she contemplated being gone, the grade-level, age, and temperament of her students, and the fact that Kanu was alone on the other side of a bifold partition. She then needed to reach a conclusion based on those facts—deciding whether to leave at all, whom to ask for assistance (Kanu, the hall monitor, or someone else), and what to request that person to do. The policy requires a teacher supervising students to engage in these deliberations, but it does not supply simple answers. As a court, the wisdom of an employee's conclusion is not the question we evaluate; instead, we are tasked with discerning whether the employee had a range of options to choose from based on her own judgment. And in a situation where an official has that sort of discretion, the official is shielded from personal liability for the choices she makes, even if they are poor ones, so long as the official does not act with actual malice or intent to cause injury.

To be sure, officials are still subject to workplace policies, and can suffer

a range of consequences for violating those policies. But the judgment that Georgia's Constitution makes is that official immunity will protect those who make bad decisions in order to also protect those who make good ones, and to ensure that public officials can carry out their day-to-day service to the people of this State without fear of litigation. See *Gilbert*, 264 Ga. at 750 ("[T]he basis of the immunity has been not so much a desire to protect an erring officer as it has been a recognition of the need of preserving independence of action without deterrence or intimidation by the fear of personal liability and vexatious suits.") (quoting Restatement (Second) of Torts § 895D cmt. b). Under the policy at issue here, "[w]hat should be done always will depend to some extent on the circumstances. And that means that the duty cannot—when applied to a public officer—be characterized properly as a ministerial one." *Eshleman*, 297 Ga. at 369. The school policy on student supervision was not so definite as to require of Caldwell a simple and absolute action in the specific situation she faced. Instead, she was required to exercise discretion.[2]

---

[2] Although we affirm the decision of the Court of Appeals, we disagree with the opinion below that Caldwell did "just enough for her actions to be discretionary" when she asked another teacher to listen out for her class. *Barnett*, 339 Ga. App. at 537. A duty is either discretionary or not, and an official cannot alter that fact by performing it well, poorly, or not at all. Our Constitution itself demands that result. The text specifically provides that for discretionary duties, so long as officials do not "act with actual malice or actual intent to cause injury," they "shall not be subject to suit or liability, and no judgment shall be entered against them, for the performance ***or nonperformance*** of their official functions."

Art. I, Sec. II, Par. IX (d) (emphasis supplied). And this Court has unanimously rejected the evaluation of the defendant's actions as a method of determining whether the duty at issue was ministerial or discretionary. Here, as in *Roper*, "[T]he discretionary act to which official immunity attached cannot be parsed in the manner that the Court of Appeals's opinion suggests; it attempts to divide the decision to act from the act itself, and attempts to provide immunity to one of the resulting bifurcations, but not the other." *Roper*, 294 Ga. at 115. Consistent with that authority, we have repeatedly applied official immunity when an official entirely failed to act. See, e.g., *Grammens*, 287 Ga. at 618 (teacher failed to offer eye protection to student, who was subsequently injured during science experiment); *Murphy*, 282 Ga. at 199 (school officials failed to create a school safety plan, even considering statutory mandate that school officials "shall" create a school safety plan); *Henderman v. Walton County Water & Sewerage Auth.*, 271 Ga. 192, 193 (515 SE2d 617) (1999) (water authority manager failed to flush water lines after complaint by a customer). These holdings make sense because the analysis of whether a function is ministerial or discretionary necessarily turns on whether "mandated actions were s i m p l e , absolute and definite, and required the execution of specific tasks without any exercise of discretion"—not whether an employee performed the function "just enough" or not at all. *McDowell*, 285 Ga. at 593-594; *Barnett,* 339 Ga. App. at 537. The Court of Appeals has recognized in other cases that inaction cannot render a discretionary duty ministerial. See, e.g., *Kelly v. Lewis*, 221 Ga. App. 506, 509 (471 SE2d 583) (1996) ("[T]he complete failure to perform a discretionary act is the same as the negligent performance of that act for the purposes of determining whether such action was discretionary or ministerial."); *Davis*, 219 Ga. App. at 122 ("[T]he act or failure to act is not ministerial in nature, but is, rather, discretionary.") (citation and punctuation omitted). In this case, on the other hand, the necessary implication of the approach taken below is that the trial court needed to evaluate whether Caldwell had done "something" or "anything" in order to determine whether the school's supervision policy was discretionary or ministerial. That is plainly incorrect, and would invite unnecessary parsing over whether an official made any minute step in the direction of a discretionary policy's goals, subjecting officials to burdensome lawsuits for their discretionary decisions — exactly the problem that official immunity sets out to avoid.

That is not to say that there could never be a policy on student supervision so definite as to render a school employee's acts ministerial. See, e.g., *McDowell*, 285 Ga. at 593 (school receptionist's acts ministerial because "she was merely required to execute specific duties as dictated by the school checkout policies"). And of course, "[t]here should be no special category of

absolute immunity for school employees." *Smith v. McDowell*, 292 Ga. App. 731, 736 (666 SE2d 94) (2008), aff'd by *McDowell*, 285 Ga. 592. To the extent that language used in prior Court of Appeals's decisions may suggest that school employees' supervision of students is always and inalterably discretionary, that conclusion would be overbroad.[3] But here, the policy's general requirement that students are never to be left in the classroom "unsupervised" by a certified school employee is not so definite as to render Caldwell's judgment regarding the supervision of her class ministerial.

Because the complained-of actions were discretionary and no evidence of actual malice or intent to injure has been presented, Caldwell is entitled to official immunity. Accordingly, we affirm the Court of Appeals's decision affirming the trial court's grant of summary judgment in Caldwell's favor.

Judgment affirmed. All the Justices concur, except Melton, P. J., and Hunstein, J., who concur specially in part. Peterson, J., disqualified.

---

[3] See, e.g., *Barnett*, 339 Ga. App. at 539 ("[B]inding precedents of our Court are clear that discretionary decisions related to supervision are entitled to official immunity 'even where specific school policies designed to help control and monitor students have been violated.'") (on motion for reconsideration) (quoting *Reece v. Turner*, 284 Ga. App. 282, 286 (643 SE2d 814) (2007)); *Butler*, 328 Ga. App. at 433 ("Georgia law is well established that the 'monitoring, supervising, and controlling the activities of students is a *discretionary* action protected by the doctrine of official immunity.'") (quoting *Perkins v. Morgan County School Dist.,* 222 Ga. App. 831, 835 (476 SE2d 592) (1996));

*Leake*, 274 Ga. App. at 225.

MELTON, Presiding Justice, concurring specially in part.

Although I concur with the analysis in the body of the majority opinion, I must write separately because I believe that dicta in footnote 2 sets forth an overly broad rule that is not applicable to the facts of this case. The majority suggests: "A duty is either discretionary or not, and an official cannot alter that fact by performing it well, poorly, or not at all." Maj. op., p. 851. I disagree with this statement, and, more fundamentally, I disagree with the majority's decision to expound upon the issue *at all*. The judicial process is served neither by inserting unnecessary and complicated issues into a case, nor by proclaiming unwavering rules to govern such complicated issues. The majority does both. I believe that this issue was handled more appropriately by Justice Peterson, who authored the opinion below. Justice Peterson reasoned as follows:

> Caldwell suggests that a total failure to comply with Section 6.5 would nevertheless be a discretionary act entitled to official immunity. We view such an argument through skeptical eyes, because a total failure to perform an act may involve no exercise of discretion or deliberation whatsoever, and it is not clear that such a failure would be considered a discretionary act covered by

official immunity. But given our resolution of this appeal, it is not necessary to decide this question.

Barnett v. Atlanta Independent School System, 339 Ga. App. 533, 538 n. 3 (792 SE2d 474) (2016). Far reaching (and, in this case, overly broad) rules like the one proposed by the majority should not be created in dicta, especially in an area of the law that requires an in-depth consideration of the law and facts on a case-by-case basis. For this reason, I cannot concur with the analysis set forth in footnote 2.

I am authorized to state that Justice Hunstein joins in this special concurrence.

Decided January 29, 2018.

Certiorari to the Court of Appeals of Georgia — 339 Ga. App. 533.

S. Leighton Moore III; The Cochran Firm, Shean D. Williams, for appellants.

McGuire Woods, Cheryl L. Haas, Kurt E. Lentz, Matthew A. Fitzgerald, Halima Horton, for appellee.

Harben, Hartley & Hawkins, Phillip L. Hartley, amicus curiae.