**THIRD DIVISION
DOYLE, P. J.,
GOBEIL, J., and SENIOR JUDGE FULLER**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 7, 2024**

# In the Court of Appeals of Georgia

A23A1470, A23A1471. BLOWE v. ROBERTS et al; and vice versa.

DOYLE, Presiding Judge.

After high school student Malachi McFadden was burned during a chemistry class experiment conducted by teacher Bridgette Blowe, McFadden's next friend, Shantiqua Roberts filed suit against Blowe and others, alleging that Blowe's negligence resulted in McFadden's injuries.[1] Blowe moved to dismiss the third amended complaint on the ground that she was protected by official immunity.[2] The trial court

---

[1] These appeals address only the trial court's February 6, 2023 order related to Roberts's claims against Blowe. No other defendant or order related to the other defendants are properly before this Court at this time.

[2] Roberts also filed a motion for partial summary judgment in response to Blowe's motion to dismiss, and the trial court addressed both motions in its order.

denied the motion in part, finding that Blowe had a ministerial duty that she negligently performed in relation to McFadden's injuries.[3]

In Case No. A23A1470, Blowe appeals, arguing that the trial court erred by denying in part her motion to dismiss and granting in part Roberts's motion for partial summary judgment by holding as a matter of law that Blowe negligently performed a ministerial act. In Case No. A23A1471, Roberts cross-appeals, arguing that the trial court erred by partially granting Blowe's motion to dismiss and denying in part her motion for partial summary judgment with regard to her argument that various county ordinances, national safety codes, and other standards created ministerial duties that Blowe negligently performed. For the reasons that follow, we affirm in part and reverse in part.

On appeal from the determination of a motion for summary judgment, this Court reviews the evidence and any questions of law de novo in order to determine

---

[3] This Court granted an interlocutory appeal from the trial court order after the trial court granted the parties a certificate of immediate review.

whether "there is a genuine issue of material fact."[4] "We review the trial court's grant of a motion to dismiss de novo."[5]

The record shows that August 5, 2019, was the first day of school at a DeKalb County public high school where Blowe was teaching a chemistry course that McFadden was assigned to for his first period. Per her lesson plan, Blowe had planned to conduct a science demonstration while the students watched. The demonstration consisted of Blowe lighting a piece of currency on fire after soaking the currency in a solution of isopropyl alcohol or ethanol and water. The solution resulted in an illusion in which the currency appeared to be on fire but was prevented from actually burning. Although Blowe had conducted the demonstration many times prior to her first period class that day, she was unable to light the currency, which she had soaked in an alcohol and water solution. Prior to her second period class rotating to her, Blowe re-soaked the currency in a new solution of ethanol and water. Blowe's demonstration was

---

[4] *Barnett v. Caldwell*, 302 Ga. 845, 845-846 (I) (809 SE2d 813) (2018), citing *Shekhawat v. Jones*, 293 Ga. 468, 469 (746 SE2d 89) (2013); *Atlanta Dev. v. Emerald Capital Investments*, 258 Ga. App. 472, 477 (574 SE2d 585) (2002).

[5] *Boatright v. Copeland*, 336 Ga. App. 107 (783 SE2d 695) (2016).

successful, and she decided to repeat the demonstration for her first-period students the next day — August 6.

The next day, the first-period students gathered around Blowe's table with McFadden seated at an adjacent table close by. Blowe performed the demonstration successfully, but many of the students requested to see it a second time. Blowe agreed, and after dousing the flames, she placed the currency into a bowl that contained the solution of water and ethanol in preparation for another attempt before walking over to turn off the lights in order for the students in the back of the class to be able to have a better view of the second demonstration.

Unfortunately, Blowe had not completely extinguished the flames, and the currency reignited in the bowl. When some of the students yelled for Blowe, she hurried back to the table, directing the students to move away. McFadden, however, remained seated where he was at the adjacent table. Blowe grabbed a beaker filled with what she thought was water and poured it on the bowl to extinguish the fire; however, the beaker contained ethanol, and pouring it on the flames caused the bowl to break and the flames to spread across the table. The flames jetted upward about four feet and across the room about six to seven feet, reaching the adjacent table and

4

McFadden, who sustained burns to his arms, face, neck, and back. A substitute teacher and paraprofessional in the class along with Blowe attempted to assist McFadden, and after hearing calls over the school radio, the maintenance manager came into the class with a fire extinguisher and doused the flames. DeKalb County schools performed an investigation of the incident, concluding that Blowe violated Standard Nine of the DeKalb County Policy of Professional Ethics because she failed to properly label the beakers used in the demonstration.[6]

Roberts filed the instant case alleging that Blowe was liable for causing McFadden's injuries because she negligently failed to perform certain ministerial acts, namely: (1) Standards 1 and 9 of the DeKalb Board Policy GBU: Professional Personnel Ethics ("DeKalb Standards"); (2) professional safety standards adopted by the school district and provided to [the school] teachers; (3) applicable law and fire code provisions from National Fire Prevention Act ("NFPA") 45 (2011) and International Fire Code ("IFC") (2012) as adopted by local ordinance and state

---

[6] The standard in question stated that "[a]n educator shall demonstrate conduct that follows generally recognized professional standards and preserves the dignity and integrity of the education profession. Unethical conduct includes but is not limited to any conduct that impairs and/or diminishes the certificate holder's ability to function professionally in his or her employment position; or behavior or conduct that is detrimental to the health, welfare, discipline, or morals of students."

statute; (4) the Flinn Scientific Student Safety Contract ("Flinn Contract"); and (5) the manufacturer's Material Safety Data Sheet ("MSDS") for ethanol.

In her third amended complaint, Roberts specifically alleged that Blowe

violated the ministerial duties imposed by safety rules, policies and procedures of the Flinn Scientific Student Safety Contract, including but not limited to the following: (1) failing to know the locations and operating procedures for all safety equipment including fire extinguisher and fire blanket; (2) failing to read the label on the beaker of ethanol to verify its contents before pouring it onto an open flame; (3) dispensing a flammable liquid directly onto an open flame; (4) using chemicals, heat, and glassware in the classroom while students were not wearing laboratory glasses; and (5) failing to handle ethanol over a pan to contain spills.

Blowe deposed that although she was familiar with Flinn, which is a company that makes science teaching materials, and the National Science Teachers Association ("NSTA"), she was not aware that any of the guidelines or rules that were crafted by those groups had been adopted by her high school or by DeKalb County schools as requirements for the science teachers to follow when conducting chemistry class or demonstrations therein. Blowe was not familiar with the NFPA or IFC. She deposed that when she initially started teaching at the high school, the science teachers decided

6

to use Flinn's materials in their classes, but she did not know whether the other teachers actually used Flinn materials or not. Blowe deposed that she had not given her students a copy of the Flinn Contract when she did the demonstration because they were not participating in the demonstration, but she was following the rules contained therein when she performed the experiment.

There was no fire blanket located in Blowe's classroom, nor was there a fire extinguisher, but Blowe knew that a blanket was in another classroom and a fire extinguisher was outside in the hall. The head of the science department deposed that each science teacher used their discretion to decide which safety rules to use in their classroom as long as they have some safety contract for students. She also deposed that even if a student had not completed a safety contract they could watch a demonstration, and she did not point to any procedure or requirement that the Flinn Contract be distributed to students before any demonstration. The individual teachers chose their own demonstrations, and there was no approval process at the school or county level. The department head also deposed that teachers normally do not use fume hoods for ethanol because it does not have a strong odor.[7]

---

[7] The Flinn Contract notes that a fume hood should be used for "volatile substances or poisonous vapors," and it does not state that a fume hood should be

7

As far as the use of goggles, the department head deposed that everyone should wear them during experiments, but students normally did not wear them during demonstrations. She also deposed that she had never discussed county ordinances in terms of fire safety, the NFPA, or the IFC, and teachers normally use guidelines like those produced by Flinn, NSTA, or from the school district. As for labeling materials and keeping additional materials at the desk during a demonstration, she deposed that it would be at the discretion of the teacher — what they are comfortable with and what their plans were for the demonstration. She deposed that there are no mandatory safety rules to follow during a demonstration other than the steps included with the particular demonstration; and with regard to safety, she never heard the word "mandatory" or "must" being used by the district.

The substitute teacher who was in the room on the day of the incident deposed that he was unaware of any training that DeKalb County schools did for classroom safety or chemistry classroom safety. His outside training courses for certification as a science teacher had not included any safety training at that point in time. He substituted in Blowe's classroom after the incident and passed out student safety

used for "flammable" solutions.

contracts to the students, but he, as substitute teacher, did not receive any additional safety training; the contracts were for the students to read, to sign, and to have their parents sign, and the students were tested on their content thereafter.

Blowe moved to dismiss the claims against her on the basis that she was protected by official immunity, and in response, Roberts moved for summary judgment, arguing that Blowe had violated several ministerial duties causing McFadden's injuries.

After a hearing on the issue of official immunity, the trial court issued an order finding that no ministerial duty was created by either Standards 1 and 9 of the DeKalb Standards or by any NSTA material because those standards either involved the exercise of discretion or were not shown to have been adopted by the school or school system. Next, the trial court found that Blowe had not been directed to learn or abide by fire code provisions from NFPA, the IFC, or the MSDS for Ethanol. Nevertheless, the trial court found that

> Defendant Blowe violated a ministerial duty by failing to provide the students with the applicable safety contract before performing the demonstration, as well as failing to abide by some of the ministerial duties within that contract, including the requirement that students wear safety goggles, which read, "Any time chemicals, heat, or glassware are

9

used, students will wear laboratory goggles. There will be no exceptions to this rule!" The safety contract, safety test, and laboratory goggles, logically, can only be provided to students by their teacher. Therefore, the Court finds this is a ministerial duty that belongs to the teacher.

The parties now appeal different portions of this order.

The doctrine of official immunity, also known as qualified immunity, offers public officers and employees limited protection from suit in their personal capacity. Qualified immunity protects individual public agents from personal liability for discretionary actions taken within the scope of their official authority, and done without wilfulness, malice, or corruption. Under Georgia law, a public officer or employee may be personally liable only for ministerial acts negligently performed or acts performed with malice or an intent to injure. The rationale for this immunity is to preserve the public employee's independence of action without fear of lawsuits and to prevent a review of his or her judgment in hindsight. . . . A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. Whether the act of a public official is ministerial or discretionary is determined by the facts of each individual case, particularly the facts specifically relevant to the official's act or omission from which the alleged liability arises. Where there is an established

policy requiring an official to take specified action in a specified situation, the policy creates a ministerial duty on the part of the official to perform the specified task. In order for the written policy to impose a ministerial duty, the policy must mandate simple, absolute, and definite action and require the execution of a specific task without any exercise of discretion.[8]

"[E]ven when an [official] clearly owes a duty of care and is absolutely required to do something, unless she has been commanded—by law or by the policy or directive of her employer—to do a particular thing, she still is engaged in the performance of a discretionary function."[9]

As a court, the wisdom of an employee's conclusion is not the question we evaluate; instead, we are tasked with discerning whether the employee had a range of options to choose from based on her own judgment. And in a situation where an official has that sort of discretion, the official is shielded from personal liability for the choices she makes,

---

[8] (Citations and punctuation omitted.) *Grammons v. Dollar*, 287 Ga. 618, 619-620 (697 SE2d 775) (2010).

[9] (Punctuation omitted.) *Barnett*, 302 Ga. at 848-849 (II). See also *Melton v. McCarthan*, 356 Ga. App. 676, 677 (848 SE2d 684) (2020) ("When a policy requires a public official to exercise discretion in its implementation by determining if the necessary prerequisite condition to the ministerial act exists, the policy does not require the performance of a ministerial duty.") (punctuation omitted), quoting *Hill v. Jackson*, 336 Ga. App. 679, 684 (1) (a) (783 SE2d 719) (2016).

even if they are poor ones, so long as the official does not act with actual malice or intent to cause injury.[10]

*Case No. A23A1470*

1. Blowe argues that the trial court erred by denying in part her motion to dismiss (and granting-in-part Roberts's motion for summary judgment) on the basis of official immunity in finding that Blowe failed to perform a ministerial duty by failing to provide students with the Flinn Contract prior to conducting the demonstration, failing to provide them with safety goggles during the demonstration, or failing to perform other unstated ministerial duties contained in the safety contract. We agree.

(a) *Flinn Contract - Failure to provide safety goggles.* The collective testimony and evidence shows that there was no established rule that required Blowe to provide the students with safety goggles during her demonstration. Although the Flinn Contract contained a guideline for students to wear goggles when they performed experiments, the contract contains no discussion of demonstrations performed by the teachers, and the testimony from the department head, Blowe, and the paraprofessional supports

---

[10] *Barnett*, 302 Ga. at 850 (II).

this conclusion. Moreover, McFadden did not allege that he was injured in his eyes or that goggles would have prevented his injuries.[11]

(b) *Flinn Contract - Failure to provide the contract.* Here again, the testimony and evidence in the record show that while Blowe and the other teachers had a duty to distribute and test the students on the content of a safety contract prior to participation by a student in an experiment, no such duty was in place prior to students observing a demonstration. Blowe had a range of actions she could take with respect to disseminating the safety contract and none required her to do so prior to holding the demonstration; therefore, she did not violate a ministerial duty by holding the demonstration prior to disseminating the contract.[12]

(c) *Flinn Contract - Failure "to abide by some of the ministerial duties within that contract."* In its final finding, the trial court determined that Blowe had certain unnamed ministerial duties that she failed to abide by in the Flinn Contract. Again, a ministerial duty is "simple, absolute, and definite action" that requires "the execution

---

[11] See, e.g., *Meagher v. Quick*, 264 Ga. App. 639, 641, 644 (1) (594 SE2d 182) (2003) (stating that damage must arise from the failure to perform the duty in question).

[12] See *Barnett*, 302 Ga. at 850 (II).

of a specific task,"[13] and the trial court's finding does not meet this definition. Accordingly, the trial court erred by denying in part the motion to dismiss and granting in part the partial motion for summary judgment as to these alleged violations of ministerial duties related to the Flinn Contract, and we reverse the order to that extent.

2. Blowe also argues that the trial court erred by finding that she negligently preformed the ministerial acts. Based on our holding in Division 1, this enumeration of error is moot.

*Case No. A23A1471*

3. Roberts argues that the trial court erred by finding that various ordinances and safety regulations did not create ministerial duties that Blowe violated when she conducted the demonstration.[14] We disagree.

---

[13] *Grammons*, 287 Ga. at 620.

[14] Roberts's brief contains argument about each alleged ministerial policy contained in one long section rather than as individual enumerations. In order to determine whether a ministerial duty exists, it is necessary to address each policy, statute, ordinance, or rule individually, and we have attempted to address those clearly referenced in the cross-appeal. Compare *Zhong v. PNC Bank*, 345 Ga. App. 135, 139 (2) (a) (812 SE2d 514) (2018) (explaining that a general enumeration of error raising the grant of summary judgment was sufficient to raise that issue before this Court without enumerating as error "the individual facets of her attack on that ruling").

Roberts argues that the following provisions created ministerial duties: (a) IFC 305.4 as adopted by DeKalb County Local Ordinance § 12-20[15]: "It shall be unlawful to deliberately or through negligence set fire to or cause the burning of combustible material in such a manner as to endanger the safety of persons or property;" (b) NFPA NFPA Standard 45 § 9.2.2.6 as adopted by DeKalb County Local Ordinance § 12-21[16]: "Chemical quantities outside of storage shall be maintained at the lowest possible level necessary for the work performed"; (c) NFPA Standard 45 § 10.3.1: "Dispensing of Class I liquids . . . shall be performed . . . (1) In a chemical fume hood; (2) In an area provided with [adequate] ventilation . . . or (3) Inside liquid storage

---

[15] This ordinance states that "[p]ursuant to [OCGA §] 25-2-1 et seq. and as may hereinafter be amended, there is hereby adopted as if fully set forth herein the state fire safety rules now and as may hereafter be promulgated by the Georgia Safety Fire Commissioner. In the event the fire marshal determines that the provisions of the state fire safety rules conflict with the provisions of the [IFC] adopted in [§] 12-21, then the most restrictive provision as determined by the fire marshal shall govern."

[16] This ordinance states that "[p]ursuant to [OCGA §] 8-2-20 and [§] 8-2-25 and as may hereinafter be amended, there is hereby adopted as if fully set forth herein the [IFC], including Chapter 1, Administration. As allowed in [OCGA §] 8-2-25, the provisions of the [IFC] are modified and amended in [§] 12-22 through [§] 12-26. In the event the fire marshal determines that the provisions of the [IFC] conflict with the provisions of the state fire safety rules adopted in [§] 12-20, then the most restrictive provision as determined by the fire marshal shall govern."

15

areas . . . ."; and (d) NFPA Standard 45 § 9.2.2.7: "Handling and storage shall conform to the manufacturers' recommendations and material safety data sheet."

We agree with the trial court that these ordinances and codes did not create ministerial duties for Blowe. They are generally applicable ordinances that adopt broader schemes, largely for purposes of building codes, permits, and inspections by the local fire marshal and office of fire prevention. They were not adopted as rules or requirements by the DeKalb County school system, and at least with regard to the requirement for use of a fume hood, the rule is different than the requirement contained in the Flinn Contract. All three require discretion on the part of Blowe to determine what action within a range of different actions she should take to meet the ordinance — was she using the lowest possible level of the chemical for the work performed, was the classroom ventilation adequate for the amount of the liquid she was using, was she handling the chemicals according to the MSDS by keeping it a certain distance away from the flame in the beaker. Although some ordinances can constitute a ministerial duty for an official, not every ordinance or statute does create a ministerial duty.[17] The requirements in these particular ordinances were not

_____

[17] See *Hemick v. Houston County School District*, 220 Ga. App. 110, 114-115 (469 SE2d 679) (1996) (holding that a statutorily derived district rule did not create a

16

"simple, absolute and definite," and they did not "require[] the execution of specific tasks without any exercise of discretion."[18] "A duty is either discretionary or not, and an official cannot alter that fact by performing it well, poorly, or not at all."[19] Blowe may have performed her discretionary duties poorly, but because McFadden failed to establish that she violated a ministerial duty leading to his injuries, his claims against her are due to be dismissed.[20]

---

ministerial duty on the part of the principal to repair a damaged grate on the school campus). Compare *Boatright*, 336 Ga. App. at 109-111 (1) (holding that a state statute prohibiting weapons on campus created a ministerial duty prohibiting the use of the cannon that was fired during high school football games).

[18] *Barnett*, 302 Ga. at 850, n.2 (II).

[19] Id. (holding that a teacher who left a classroom for 30 minutes — during which time a student received fatal injuries while rough-housing with another student — did not have a ministerial duty under a policy stating that a teacher should never leave a class unsupervised because supervision was never defined in the policy, making the policy discretionary).

[20] See *Grammons*, 287 Ga. at 620-621 (holding that a science teacher did not violate a ministerial duty to a student who received an eye injury during a science experiment when the teacher failed to provide eye protection to the student prior to the experiment because the policy at issue required "the instructor to engage in a discretionary act, i.e., to exercise personal deliberation and judgment by examining the facts and reach a reasoned conclusion with regard to the applicability of the dictates of the written policy").

*Judgment affirmed in part and reversed in part. Gobeil, J., and Senior Judge C. Andrew Fuller concur.*