**FOURTH DIVISION**
**MCFADDEN, P. J.,**
**WATKINS and PADGETT, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**June 22, 2026**

# In the Court of Appeals of Georgia

A26A0723. HAYNES v. ENGLISH.

MCFADDEN, Presiding Judge.

Melody English brought this action on behalf of her minor son, E. E. She alleged that E. E. sustained injuries while being restrained by three educators at his elementary school — Anita Haynes, Rickey Atkins, and Andrea Spooney-Smith ("the educators") — and she asserted claims against the educators for negligence and intentional torts. The educators sought summary judgment on the ground of official immunity, arguing that as a matter of law their actions were discretionary and there was no evidence that they had acted with intent or actual malice. The trial court denied their motion and we granted interlocutory appellate review.

As detailed below, we agree with the trial court that the educators are not entitled to summary judgment on the ground of official immunity. Genuine issues of material fact exist as to whether the educators employed a "physical restraint" against E. E., which under the applicable county school board policy was an action involving discretion, or whether they employed a "prone restraint," which was expressly and unequivocally forbidden by the policy and thus involved a ministerial duty. We do not reach the parties' arguments about evidence of actual malice or intent.[1]

1. *Facts*

The parties offer conflicting accounts of the events in this case, but viewed in the light most favorable to English, the nonmovant, see *Lowe v. Etheridge*, 361 Ga. App. 182 (862 SE2d 158) (2021), the evidence shows that at the time of the incident, E. E. was a third grader attending an elementary school in the Clayton County School District. He had diagnoses of autism and other special needs, and he was in a class for

---

[1] Oral argument was held in this case on February 24, 2026, and is archived on the court's website. See Court of Appeals of the State of Georgia, Oral Argument, Case No. A26A0723 (Feb. 24, 2026), available at https://vimeo.com/1168886195?fl=tl&fe=ec.

students with behavioral challenges. Atkins was his classroom teacher and Haynes was his classroom paraprofessional.

The incident at issue in this case occurred on August 11, 2021. E. E. was upset because he had been asked to remain in the classroom while the rest of the class went to physical education. He was drawing a picture with a pencil, and when some paper fell onto the floor he began to pick it up while still holding the pencil. Haynes grabbed E. E.'s arms, held them behind his back, and took him to the floor in a prone position, face down with his stomach on the floor. Atkins then restrained the boy's legs, twisting them in the process. E. E. was crying and Spooney-Smith, another paraprofessional at the school, heard the commotion. Spooney-Smith offered to assist and took Haynes's place holding E. E. on the floor. The educators held E. E. in the restraint for about two minutes.[2]

The school notified E. E.'s mother that he had been restrained, and his father picked him up from school. E. E. was crying and appeared to be in pain and his mother, an emergency medical technician, evaluated his condition and concluded that

---

[2] The educators dispute most of this account of the incident. Their version of events is discussed in the analysis below.

something was "seriously wrong." Later that day E. E. went to the hospital, where he was diagnosed with a broken clavicle.

The Clayton County School District had a written policy governing restraint of students. As detailed below, the policy permitted educators, through the exercise of judgment, to use physical restraint on students in certain situations, but it expressly excluded prone restraint from the definition of physical restraint and forbid the use of prone restraint.

The policy defined physical restraint as "direct physical contact from an adult that prevents or significantly restricts a student's movement." It provided that physical restraint could "be used in District schools only in situations in which the student is an immediate danger to himself/herself or others and the student is not responsive to less intensive behavioral interventions including verbal directives or other de-escalation techniques." It also detailed aspects of the use of physical restraint, including how and when that form of restraint could be used, who could use it, training of employees on its use, and documentation and parental notification of its use. Importantly, in discussing physical restraint, the policy stated: "Nothing in this Policy shall be construed to eliminate or restrict the ability of a District employee to

use his or her discretion in the use of physical restraint to protect students or others from imminent harm or bodily injury. Nothing in this Policy shall be construed to impose ministerial duties on any District employees."

The policy stated that "[t]he term 'physical restraint' does not include prone restraint," which it defined as "a specific type of restraint in which a student is intentionally placed face down on the floor or another surface, and physical pressure is applied to the student's body to keep the student in the prone position." The policy set forth no circumstances in which prone restraint could be used. Instead, it stated: "Use of prone restraint is prohibited in all District schools."

2. *Analysis*

The educators argue that the trial court erred by denying their motion for summary judgment on official immunity grounds. We disagree.

Under the doctrine of official immunity (also known as qualified immunity), public employees "may be held personally liable for negligence relating to their official duties only when performing 'ministerial' acts; 'discretionary' acts are only subject to suit when performed with actual malice or intent to cause injury." *Barnett v. Caldwell*, 302 Ga. 845, 848(II) (809 SE2d 813) (2018). "[T]he single overriding factor

[in an official immunity analysis] is whether the specific act from which liability arises is dicretionary or ministerial." *Marshall v. McIntosh County*, 327 Ga. App. 416, 420(3)(a) (759 SE2d 269) (2014) (citation and punctuation omitted).

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, on the other hand, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.

Id. (citations and punctuation omitted).

Student supervision is typically a discretionary function. *Barnett*, 302 Ga. at 849(II). But when determining if actions are discretionary or ministerial, "the dispositive issue is the character of the specific actions complained of, not the general nature of the job." Id. at 848(II). Accord *McDowell v. Smith*, 285 Ga. 592, 594 (678 SE2d 922) (2009); *Hemak v. Houston County Sch. Dist.*, 220 Ga. App. 110, 114 (469 SE2d 679) (1996).

So even in the context of student supervision, "a written (or unwritten) policy, a supervisor's specific directive, or a statute may establish a ministerial duty — but only if the directives are so clear, definite, and certain as to merely require the

6

execution of a specific, simple, absolute, and definite duty, task, or action in a specified situation without any exercise of discretion." *Barnett*, 302 Ga. at 848(II).[3] We look to "whether the official owed a duty that is particularized and certain enough to render her duty a ministerial one." Id. (citation and punctuation omitted).

We agree with English that the county school district's written policy provided a clear, specific, and certain directive with regard to the use of prone restraint on a student. As to the use of prone restraint, the policy did "not leave any room for thought or discretion or the weighing of various factors and circumstances as to what [to do,]" *Hall v. Acker*, 367 Ga. App. 411, 415(1) (885 SE2d 266) (2023) (punctuation omitted) — it forbid that form of restraint, without exception. Because the policy "merely require[d] the execution of a specific, simple, absolute, and definite duty, task, or action in a specified situation without any exercise of discretion[,]" *Barnett*, 302 Ga. at 848(II), the use of prone restraint in violation of the policy was a ministerial action. See *McDowell*, 285 Ga. at 593-94 (holding that a "hard and fast" policy

---

[3] The cases that the educators cite for a bright-line proposition that the act of monitoring, supervising, and controlling students is discretionary were either decided before our Supreme Court issued its decision in *Barnett*, supra, or in the case of *Odum v. Harn*, 344 Ga. App. 488 (811 SE2d 19) (2018), vacated and remanded for reconsideration in light of the *Barnett* decision. *Odum v. Harn*, S18C0850, slip op. at 1 (Ga. Aug. 2, 2018) (2018 Ga. LEXIS 512) (unpublished).

regarding school checkouts that forbid an employee, without exception, from releasing a student without first consulting the student's information card imposed a ministerial duty).

English complains that the educators engaged in a ministerial action, in violation of the policy, when they used prone restraint against E. E. by intentionally placing him face down on the floor and holding him in that position. If in fact the educators used a prone restraint as defined by the policy — an intentional placement of E. E. face down on the floor and application of physical pressure to keep him in that position — then they are not entitled to official immunity.

But a genuine issue of material fact exists as to the nature of the restraint used by the educators. In their depositions, the educators testified that they did not place E. E. in a face-down prone restraint but rather in a "horizontal restraint" in which E. E. was on his side. Unlike a prone restraint, the horizontal restraint was an allowable position on which the educators had been trained. They testified that they put E. E. in the horizontal restraint position for safety reasons, because he had stabbed Haynes with his pencil and they needed to remove the pencil from his hand. E. E. contradicted the educators' version of events. He testified that he was not "brought to the floor on

[his] side or some other way," but face down, and he denied stabbing Haynes with the pencil, although he suggested that Haynes might have thought he was about to do so because he was holding the pencil as he picked up paper from the floor.

The educators point to evidence of a statement, attributed to E. E. in medical records, that contradicts aspects of the boy's account of the incident. That evidence does not require us to disregard E. E.'s account. The rule announced in *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680) (1986), under which, on summary judgment, a court should disregard the portions of a party's self-contradictory sworn testimony that favor the party, does not apply here because neither E. E.'s statement to medical providers nor the written report of that statement created by those providers was sworn testimony. See *CSX Transp. v. Belcher*, 276 Ga. 522, 523(1) (579 SE2d 737) (2003) (holding that the *Prophecy* rule does not apply to unsworn testimony).

In summary, the existence of a genuine issue of material fact regarding the nature of the restraint used on E. E. creates a jury question that affects whether the educators' actions may be characterized as discretionary or ministerial. Consequently,

the educators are not entitled to summary judgment on the ground of official immunity, and the trial court did not err in denying their motions.

Given this conclusion, we do not reach the issue of the existence of evidence of actual malice or intent at the summary judgment stage, because that issue would be dispositive only if the educators' actions were discretionary.

*Judgment affirmed. Watkins and Padgett, JJ., concur.*